```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


ANGIODYNAMICS, INC.             )
          Plaintiff             )
                                )
                                )
          v.                    ) C.A. NO. 09-cv-30181-MAP
                                )
BIOLITEC AG,                    )
WOLFGANG NEUBERGER,             )
BIOLITEC, INC., and             )
BIOMED TECHNOLOGY HOLDINGS, LTD.)
          Defendants            )
```

### MEMORANDUM AND ORDER REGARDING
### PLAINTIFF'S EMERGENCY MOTION FOR CONTEMPT
                (Dkt. No. 205)

                April 11, 2013

**PONSOR, U.S.D.J.**

#### I. INTRODUCTION

This case originally arose out of a private commercial dispute between the parties. Over the last month, however, the case has turned into a challenge to the very foundation of the rule of law. Defendants Wolfgang Neuberger, Biolitec AG ("BAG"), and Biomed Technology Holdings, Ltd. ("Biomed") flagrantly and intentionally violated a preliminary

injunction issued by this court.[1]  Plaintiff brought this motion for civil contempt in response to Defendants' notice to the court that they had completed the action forbidden by the preliminary injunction.  The court will enter coercive sanctions to ensure Defendants' prompt compliance with the order.  These coercive sanctions will remain in place until Defendants effectively restore the parties to the status quo ante.  The court will also refer this case to the United States Attorney for prosecution for criminal contempt.

## II. BACKGROUND

For purposes of this motion, the court has no need to go into the detailed relationship among the parties and the substance of the private commercial dispute.  That material has been extensively outlined in prior decisions.  AngioDynamics, Inc. v. Biolitec, Inc., 2011 WL 3157312, *1-2 (D. Mass. July 25, 2011); AngioDynamics, Inc. v. Biolitec AG, --- F. Supp. 2d ----, 2012 WL 6569272 (D. Mass. Dec. 14, 2012).  However, a brief background of the events leading up to the motion at hand is required.

---

[1] Defendant Biolitec, Inc. has filed for Chapter 11 bankruptcy, and the contempt proceedings do not involve this defendant.

In August 2012, Plaintiff became aware that Defendant BAG planned to complete a merger with its Austrian subsidiary entity, Biolitec Unternehmensbeteiligungs I AG ("BUIAG"). Defendant BAG set a shareholders' meeting for August 30, 2012, to vote on the proposed merger of BAG into BUIAG. Following the proposed merger, the new entity would hold all assets and liabilities previously held by BAG, and shareholders in BAG would have their shares converted into shares of the new entity. BAG publicly announced that the 75% ownership share of Defendant CEO Wolfgang Neuberger in BAG guaranteed that his plan would be approved by a majority of the shareholders.

Plaintiff filed for a preliminary injunction to prevent Defendants from completing the merger. Plaintiff alleged that the merger would place BAG's assets out of its reach, as American judgments are unenforceable in Austria. On August 29, 2012, Judge Zobel granted Plaintiff's Motion for a TRO and Preliminary Injunction to bar this merger. The injunction restrained Defendants from:

- "carry[ing] out the proposed 'downstream merger' of Biolitec AG with its Austrian

> subsidiary;
> 
> - "alienat[ing], dispos[ing] of, sell[ing] dissipat[ing], encumber[ing], or otherwise transfer[ing] any ownership interest it holds in any other defendant during the duration of this Order; and
> 
> - "alienat[ing], dispos[ing] of, sell[ing] dissipat[ing], encumber[ing], or otherwise transfer[ing] any interest it may have in any property during the duration of this Order, except that this Order shall not preclude the defendants from taking such actions as are reasonable and necessary to the ongoing and continued operation of the business of Biolitec, Inc., Biolitec AG, and Biomed Technology Holdings, Ltd. in the ordinary course of business, including the payment of reasonable attorneys' fees for the provision of legal services; and except that this Order shall not apply to the reasonable and necessary personal and living expenses of

4

>     defendant Wolfgang Neuberger."

(Dkt. No. 126.)  The injunction further restrained, with minor exceptions, Defendants' use of their property pending a further order of this court.

On September 6, 2012, defense counsel informed the court that, despite Judge Zobel's order, Defendant BAG had proceeded with the shareholders' meeting and vote. (Dkt. No. 133 ¶ 5.)  Defendants did not inform the minority shareholders of the TRO. (Dkt. No. 136-1, Sept. 10, 2010 Reynolds Decl. ¶ 11.)  Given Defendant Neuberger's three-quarter share in the company, it was not surprising that the vote in favor of the merger passed by a wide margin.

The convening of the shareholders' meeting and the vote in favor of the merger, in the teeth of the preliminary injunction, raised troubling questions about Defendants' good faith.  Their argument in opposition to the issuance of the preliminary injunction was anchored on their contention that the injunction would bar the meeting and vote, yet they immediately proceeded with the vote right after the injunction issued.  Reassured by Defendants that the vote in favor of the merger did not, technically, effectuate the

merger, and that Defendants still intended to hold off on the merger out of respect for the injunction, this court concluded that, since the formal merger of BAG into the Austrian entity had not occurred, no outright violation of the preliminary injunction had taken place.

On September 13, 2012, after hearing oral argument, this court reaffirmed the preliminary injunction entered by Judge Zobel. (Dkt. No. 141.) Defendants moved for reconsideration of the preliminary injunction and requested an evidentiary hearing. (Dkt. No. 144.) The court declined the request to reconsider the preliminary injunction and hold an evidentiary hearing on December 14, 2012, in a lengthy decision justifying the issuance of the preliminary injunction. <u>AngioDynamics, Inc. v. Biolitec AG</u>, --- F. Supp. 2d ----, 2012 WL 6569272 (D. Mass. Dec. 14, 2012).

Defendants immediately appealed the preliminary injunction to the First Circuit asking for expedited resolution and also requesting that the First Circuit modify the preliminary injunction pending the appeal pursuant to Fed. R. Civ. P. 8(a)(2). On February 4, 2013, the First Circuit denied Defendants' motion for modification.

Defendants then filed in this court an emergency motion to vacate the order pursuant to Fed. R. Civ. P. 60(b)(2). (Dkt. No. 190) That motion was also denied for failure to raise sufficient new evidence to justify altering the preliminary injunction. (Dkt. No. 195)

Despite the continued affirmance of the preliminary injunction by this court and the First Circuit, Defendants notified this court on March 15, 2013, that:

> Biolitec AG's downstream merger with its Austrian subsidiary has been completed pursuant to the direction of Biolitec AG's Supervisory Board. The merger was completed [on] March 15, 2013, when the Commercial Court of Vienna approved registration of the merger in Austria.

(Dkt. No. 199, Defs.' Notice of Completion of BAG's Downstream Merger 1.)

Unsurprisingly, this concession prompted Plaintiff to file the current emergency motion for contempt.

On April 1, the First Circuit heard oral arguments on Defendants' expedited appeal. In an unusually prompt turn-around, the First Circuit upheld the preliminary injunction on the same day. Two days later, this court heard oral arguments on Plaintiff's motion for contempt. At that

hearing, this court ordered individual Defendant Neuberger to appear in person at a hearing on April 10 to show cause why he should not be held in civil or criminal contempt.

In direct defiance of the court's order to personally appear, Defendant Neuberger notified the court that he would not attend the show-cause hearing because he was "afraid that the Court may grant ADI's request to incarcerate him until Biolitec AG relocates its corporate domicile back to Germany." (Dkt. No. 243.)

### III. DISCUSSION

A. Civil Contempt.

Courts have the inherent power to sanction for contempt. The contempt power is a potent one. Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967); In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008). Because of its potency, the First Circuit has emphasized prudential principles to be considered when a court deploys sanctions for contempt. In re Grand Jury Investigation, 545 F.3d at 25.

To prove civil contempt, a movant must show with clear

and convincing evidence that "(1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order."  Hawkins v. Dept. of Health & Human Serv., 665 F.3d 25, 31 (1st Cir. 2012) (internal quotations and citation omitted).

Plaintiff can easily make out each of these elements with clear and convincing evidence from the record.  First, Defendants had notice of the order as parties to the case when Judge Zobel entered the temporary restraining order and this court reaffirmed the order and issued a preliminary injunction.  (Dkt. Nos. 126 and 141.)

Second, the order could not have been more clear and unambiguous.  The first requirement in the order for preliminary injunction was that "Defendants shall not carry out the proposed 'downstream merger' of Biolitec AG with its Austrian subsidiary."  (Dkt. No. 141.)  The court also repeatedly told Defendants "that the merger should not take place, and [the court] expect[s] that that order will be adhered to."  (Dkt. No. 142, Tr. Mot. Hearing 94.)

Third, Defendants repeatedly assured the court that they could and would comply with the order to not carry out the proposed downstream merger. When questioned about the effect of the shareholder vote, Defendants identified several additional actions that would have to be taken to effectuate the merger: (1) the execution of a formal Notice of Merger by Defendant Neuberger which would then be filed with the German commercial register (Dkt. No. 144-2, Gebhardt Decl. ¶ 9); (2) filing an application for registration of the Planned Merger in an Austrian court (Dkt. No. 179-1, Trettnak Decl. ¶ 3); (3) filing a certificate of approval from the German court in the Austrian court (Dkt. No. 179-1, Trettnak Decl. ¶ 10). Defendants also asserted that they could withdraw their application to register the merger from the Austrian court. (Dkt. No. 179-1, ¶ 4, 9.) In carrying out the downstream merger, Defendants had to make conscious decisions to take each of the steps that they identified to propel the merger forward in defiance of the injunction.

Finally, the movant must show that Defendants violated the order. This prong often requires courts to grapple with

10

evidentiary issues of compliance.  Here the court is presented with no such difficulties.  Defendants themselves filed a notice with this court that it completed "Biolitec AG's downstream merger with its Austrian subsidiary."  (Dkt. No. 199, Notice of Merger 1.)  Defendants also acknowledged that the text of the order prohibited this action.  (Id.)

Defendants attempt to argue that they have complied with the preliminary injunction because "completion of the merger did not violate the stated purpose of [the] Preliminary Injunction."  (Dkt. No. 199, Notice of Merger 2.)

Defendants' attempt to argue compliance by referring to the general purpose of the injunction while conceding that they violated the text is a non-argument.  In determining whether an order is unambiguous enough to justify civil contempt, the First Circuit has demanded that courts look to "the four corners of the order [to ascertain] what acts are forbidden" and the inquiry is limited "to an examination of that document's text."  Goya Foods, 290 F.3d at 76.  The text of a court order determines its power over parties.  To allow parties to independently deduce the purpose of a court

11

order and determine what acts would be most in line with the purpose -- regardless of the text -- would make this court irrelevant.  "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."  Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911).

Additionally, Defendants' rationalization of its contemptuous behavior is an attempt to re-litigate the finding by this court that Plaintiff would be irreparably harmed by the merger.  Defendants extensively argue that Plaintiff has not been harmed by the merger because Defendants believe that Plaintiff still can enforce a potential judgment in Germany.  Two district court judges rejected Defendants' arguments in entering the TRO and then preliminary injunction.  This court again rejected these arguments on motions for reconsideration and modification.  The First Circuit rejected these arguments on motions for modification and direct appeal.  There is no doubt that the

preliminary injunction that constrained the merger was valid and that Defendants had ample opportunity to present their objections.

Even if Defendants effectuated the downstream merger in a good faith effort to allow Plaintiff to enforce a judgment in Germany that would not absolve them of a finding of civil contempt. The First Circuit has made clear that good faith is not a defense to civil contempt. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 76 (1st. Cir. 2002). "An act does not cease to be a violation of . . . a decree merely because it may have been done innocently." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).

The violation of a court order may be punished simply as a violation of the text alone -- when a defendant is in good faith, and even when a plaintiff is not harmed. But, it is worth observing here, Plaintiff has argued, and the court agrees, that Defendants in fact violated this court's injunction, now affirmed by the First Circuit, in every way it could be violated: text, substance, spirit, body, and soul. Moreover, as the court found, despite Defendants' arguments, the effectuation of the merger has likely harmed

Plaintiff, and this harm to Plaintiff -- the placement of Defendants' assets outside the reach of Plaintiff in the likely event that Plaintiff recovers judgment -- was precisely the reason that Defendants went forward with their contumacious behavior. In other words, while Defendants' bad faith may be legally irrelevant, the record strongly supports the conclusion that bad faith was at the heart of Defendants' conduct and motivated their decision deliberately to defy the court's order.

The effectuation of the downstream merger by Defendants BAG, Biomed, and Wolfgang Neuberger -- in the face of explicit reassurances to this court orally and in writing that Defendants intended to comply -- constitutes the most flagrantly offensive violation of a court order that this court has personally encountered. There can be no debate that all four of the prudential criteria that inform a court's consideration of a motion for civil contempt have been satisfied by clear and convincing evidence. The only question remaining is what remedy the court can craft to sanction the civil contempt.

Courts can craft civil contempt sanctions either to

coerce compliance with the court's order or compensate a movant for losses sustained from the violation of the court order.  Hawkins, 665 F.3d at 32 (internal quotation and citation omitted).  Here, the court has a responsibility to the system of law it upholds to move quickly to craft sanctions to coerce Defendants to restore the status quo ante.

"[W]here the purpose [of the sanction] is to make the defendant comply, the court[] . . . must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the results."  United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947).  While Defendants have undoubtedly already taken an action that was forbidden by the order, the record is clear that this action can be undone through a determined, good faith effort.  At the oral arguments, counsel for Defendants outlined the steps that would have to be taken to restore the status quo ante.  It may indeed be impossible, as Defendants' counsel suggested, technically to "rescind" the merger at this time.  The court makes no finding on this

point, beyond the observation that Defendants' general credibility about what it can or cannot do is subject to doubt. In any event, Defendants concede that restoring the status quo ante would in fact not be impossible, but merely lengthy,[2] burdensome, and onerous.[3] (Dkt. No. 233, April 3 Hearing Tr. 36.)

"A trial court has wide discretion in its choice of sanctions." Goya Foods, 290 F.3d at 77. This is particularly true when the court is attempting to coerce compliance. United Mine Workers of America, 330 U.S. at 304; G. & C. Merriam Co. v. Webster Dictionary Co., Inc., 639 F.2d 29, 41 (1st Cir. 1980). The court can order

---

[2] In one filing, Defendants contend that "the process would take at least several months." (Dkt. No. 241, Emergency Mot. for Video Link Appearance ¶¶ 2, 3.)

[3] The possibility of restoring the status quo ante makes this case distinguishable from cases where an action could not be undone. Coercive measures are inappropriate when the action cannot be undone. See Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442 (1911). When an enjoined protest or boycott takes place, for example, or an enjoined representation is published, a court could never effectuate a return to the status quo ante. But in the case before the court, Defendants concede that it is possible to restore the status quo ante even though it would be difficult. When sanctions are tied to "*curing* the contumacy," they are properly considered civil remedies. See Marquardo, 149 F.3d at 40.

incarceration to insure acquiescence to a court's order. United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998). The court can also order a monetary fine. G. & C. Merriam Co., 639 F.2d at 41.

The court orders the following coercive sanctions until Defendants effectively return Biolitec AG to the status quo ante:

- An arrest warrant will be issued for the arrest of Defendant Wolfgang Neuberger.  The court asks the marshals to do everything possible to ensure that the warrant is effectuated internationally and Neuberger is brought to stand before this court;
- A fine will be assessed to Defendants.  The fine will increase over time as follows:
    - On May 10, 2013, Defendants will be assessed a fine of $1 million;
    - On June 1, 2013, Defendants will be assessed a fine of $2 million;
    - On July 1, 2013, Defendants will be assessed a fine of $4 million;
    - On August 1, 2013, Defendants will be assessed a

    fine of $8 million;

- After August 1, Defendants will be assessed a fine of $8 million on the first of each month.

Defendants "have the keys [to their] prison in their own pockets." Marquardo, 149 F.3d at 39 (quoting Shillitani v. United States, 384 U.S. 364, 368 (1966).  The coercive fines and arrest warrant (or imprisonment, when Defendant Neuberger is apprehended) will be lifted as soon as the court is satisfied that the status quo ante has been restored.

  In addition to the sanctions detailed above, Plaintiff's counsel may submit a motion with a supporting affidavit and contemporaneous time records for an award of attorneys' fees expended in prosecuting the motion for civil contempt.

B.  Criminal Contempt.

  "[O]nce the subject of an order willfully refuses to meet the court's order, criminal contempt has been committed independently of whether this conduct receives the additional attention of the court [through civil contempt]." Marquardo, 149 F.3d at 40.  Defendant Wolfgang

Neuberger has willfully refused to comply with two orders by this court: (1) the order enjoining the downstream merger (Dkt. No. 141); and (2) the order to appear personally to show cause (Dkt. No. 231).  While Defendant Neuberger offers rationalizations for his noncompliance, there is no doubt from the record that these actions were taken willfully.

The court has provided Defendant Neuberger with notice in open court and an opportunity to show cause pursuant to Fed. R. Crim. P. 42(a)(1).  The court will now request that the United States Attorney's Office prosecute the criminal contempt.  "[C]riminal contempt proceedings . . . punish those who willfully flout an order of the court. . . . [Defendant] made a deliberate decision to refuse a court order . . ., [he] now must face the consequences of that decision."  United States v. Nightingale, 703 F.2d 17, 19 (1st Cir. 1983).

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's emergency motion for contempt (Dkt. No. 205) is hereby ALLOWED.  The court has issued an arrest warrant for Defendant Wolfgang

Neuberger for civil contempt and will refer the matter to the United States Attorney's Office for criminal contempt prosecution.  The following coercive fines will also be levied:

- On May 10, 2013, Defendants will be assessed a fine of $1 million;
- On June 1, 2013, Defendants will be assessed a fine of $2 million;
- On July 1, 2013, Defendants will be assessed a fine of $4 million;
- On August 1, 2013, Defendants will be assessed a fine of $8 million;
- After August 1, Defendants will be assessed a fine of $8 million on the first of each month.

The fines and incarceration for civil contempt will continue until Defendants effectively restore the status quo existing prior to the violation of the court's order.

It is So Ordered.

>           /s/ Michael A. Ponsor
>           MICHAEL A. PONSOR
>           U. S. District Judge