UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| ANGIODYNAMICS, INC. | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. NO. 09-cv-30181-MAP |
| | ) | |
| BIOLITEC AG, | ) | |
| WOLFGANG NEUBERGER, | ) | |
| BIOLITEC, INC., and | ) | |
| BIOMED TECHNOLOGY HOLDINGS, | ) | |
| LTD. | ) | |
| Defendants | ) | |


MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTIONS FOR SANCTIONS
(Dkts. No. 327, 350 & 359)

January 14, 2014

PONSOR, U.S.D.J.

I.   INTRODUCTION

Plaintiff has filed two motions, each pursuant to Fed.
R. Civ. P. 37, seeking sanctions and entry of default
judgment based on Defendants' continuing failure to comply
with their discovery obligations.  (Dkt. Nos. 327 & 350.)
Plaintiff has also filed a motion for default judgment
arising from Defendants' refusal to adhere to this court's
preliminary injunction and order of contempt.  (Dkt. No.
359.)  Because Defendants' misconduct during the course of

discovery has traveled well beyond the boundary of what is even remotely acceptable in the conduct of litigation, the court will allow the two Rule 37 motions and enter default judgment against Defendants on liability.  While the decision on Plaintiff's discovery-related motions obviates the need to rule on its contempt motion, Defendants' obdurate defiance of this court's preliminary injunction order bolsters the conclusion that Defendants have conducted themselves in bad faith.[1]

## II.  FACTS

### A.  The Litigation.

The facts underlying this litigation have been fully detailed on previous occasions, and only a summary recitation is necessary here.  AngioDynamics, Inc. v. Biolitec AG, 910 F. Supp. 2d 346 (D. Mass. 2012); AngioDynamics, Inc. v. Biolitec, Inc., 2011 WL 3157312, at

---

[1] Because the court's rulings dispose of this case substantively, Defendants' Motion for Summary Judgment, (Dkt. No. 366), and Plaintiff's Cross-Motion for Summary Judgment, (Dkt. No. 372) will be denied as moot. Defendants' Emergency Motion for Extension of Time to September 20, 2013, to Provide Defendants' Expert Report, (Dkt. No. 335), and Defendant's' Motion to Amend Answer to Amended Complaint, (Dkt. No. 338), will also be denied.

*1-2 (D. Mass. July 25, 2011).  Plaintiff has brought suit against Defendants Biolitec AG ("BAG"), Wolfgang Neuberger, Biolitec, Inc. ("BI"), and Biomed Technology Holdings, Ltd. Defendant Neuberger is the Chief Executive Officer ("CEO") of BAG and BI, and the majority shareholder of each company.

The present suit is based on a supply and distribution agreement between Defendant BI, a subsidiary of BAG, and Plaintiff.  Defendant BI agreed to defend and indemnify Plaintiff against all third-party patent infringement claims arising out of the marketing and distribution of Defendants' products.  Despite this agreement, after Plaintiff found itself embroiled in patent infringement litigation with a third party, Defendant BI refused to indemnify Plaintiff, and Plaintiff ended up having to pay substantial damages out of its own pocket.  Litigation between Plaintiff and BI thereafter ensued, with Plaintiff claiming that BI had reneged on its prior agreement, and a court in the Northern District of New York ultimately found Defendant BI liable to Plaintiff for breach of contract in the amount of $16,463,846.94 plus pre-judgment interest.

In the suit before this court, Plaintiff alleges that

Defendant BAG deliberately diverted virtually all the assets out of its subsidiary BI to avoid payment of the New York judgment, essentially looting BI to render it judgment-proof.  Among other allegations, Plaintiff also accuses Defendant BAG and Neuberger of tortious interference with a contract.

B.   <u>The Preliminary Injunction and Defendants' Contempt.</u>

BAG is currently subject to a preliminary injunction, issued by this court in 2012.  The facts underlying the issuance of the injunction and Defendants' ensuing deliberate defiance of the injunction have been described in detail in previous memoranda.  <u>AngioDynamics, Inc. v. Bioletec AG</u>, 946 F. Supp 2d 205 (D. Mass. 2013).  In summary, Plaintiff learned in the summer of 2012 that Defendant BAG, a German corporation, intended to effectuate a merger with an Austrian subsidiary.  This merger, as Plaintiff alleged and the court ultimately found, would render virtually impossible any effort by Plaintiff to enforce any judgment against BAG in this court based upon its systematic looting of its subsidiary BI.  The court found, based on the parties' submissions, that Plaintiff

would likely be able to enforce this court's judgment in Germany, whereas pursuit of BAG in Austria would require the filing of an entirely new lawsuit.  In other words, the downstream merger of BAG with its Austrian subsidiary would render the protracted and very expensive litigation before this court meaningless.  Everything would have to be repeated in Austria <u>ab initio</u>.[2]

Convinced by Plaintiff of the bad faith underlying the proposed merger, and finding that Plaintiff had demonstrated both a likelihood of success on the merits and irreparable harm, this court explicitly enjoined Defendants from proceeding with the merger while this litigation was pending.  <u>Id.</u>; (Dkt. No. 141).  Defendants appealed, and the First Circuit affirmed this court's decision to issue the injunction.  <u>AngioDynamics, Inc. v. Biolitec AG</u>, 711 F.3d 248 (1st Cir. 2013).

On March 15, 2013, while the appeal of this court's preliminary injunction was pending before the First Circuit,

---

[2] An affidavit by a former business associate of Neuberger, submitted by Plaintiff in support of its Motion for Preliminary Injunction, quoted Neuberger as informing him that this was precisely the goal of the merger.  (Dkt. No. 110.)

Defendants -- in direct, admitted defiance of the injunction -- went forward with the merger anyway. (Dkt. Nos. 199 & 200.) Plaintiff responded with a Motion for Contempt, and Defendant Neuberger was ordered to appear in person at the hearing on the motion to show cause why he should not be held in contempt. (Dkt. No. 242.) Neuberger failed to attend, and Defendants were held in civil contempt. (Dkt. No. 247.)

Neuberger's explanation for his decision not to appear was that, if he had come to court, the undersigned might have imposed sanctions on him for his contumacious behavior. According to his lawyer, Neuberger did not want, and should not be required, to risk that. Counsel announced that Neuberger would be willing to appear at the contempt hearing by telephone from Germany, to be sure that if the court ultimately decided against him he would be safe from any consequences. Plaintiff's counsel objected, pointing out (among other things) that this arrangement would interfere with his ability to cross-examine Neuberger, and the court declined to afford Neuberger this privilege.

Following the hearing, the court rejected Defendants'

argument that they had somehow complied with the "spirit" of the court's injunction, while admittedly disregarding its explicit terms.  The court also rejected the claim, ambiguously presented, that Plaintiff was somehow no worse off following the merger than before and that, since Plaintiff was not harmed, it would be improper for the court to enforce the preliminary injunction through any contempt sanction.  Finally, the court was also not persuaded by Defendants' contention, later retracted, that once the merger was completed, BAG was legally and logistically unable to revoke it.  In the end, Defendants conceded that it would be possible to take action that would effectively place BAG in the position it was before the merger, though the process would be inconvenient and would require some months.  This Defendants refused to do.  (Dkt. No. 248.)

To coerce compliance with the preliminary injunction, the court ordered Defendants to pay a series of escalating fines until they effectively restored the status quo that existed prior to the merger.  An arrest warrant was also issued for Defendant Neuberger based on the finding of civil contempt, and the court indicated that it would be referring

the matter to the United States Attorney's Office for criminal contempt prosecution.

In response, Defendants moved for reconsideration, (Dkt. No. 269), filed a motion to disqualify the undersigned, (Dkt. No. 274), and requested relief from the preliminary injunction, (Dkt. No. 277).  Those motions were denied.[3]  (Dkt. No. 341.)  Defendants have appealed the initial contempt order and the court's denial of their subsequent motions.  The appeal of those decisions is still pending.[4]

On May 24, 2013, Plaintiff filed a Motion for Default

---

[3] Defendants then filed a Petition for Writ of Mandamus with the First Circuit seeking an order directing the undersigned to disqualify himself from further involvement in this case.  (Dkt. No. 356.)  On November 18, 2013, the First Circuit summarily denied Defendants' Petition, noting that "[t]he basis for the recusal request is that the judge expressed entirely understandable dismay that petitioners violated a preliminary injunction . . . and then attempted to justify their behavior by arguing, in part, that their actions did not violate the underlying purpose of the injunction." (Dkt. No. 380).  The Petition, the First Circuit concluded, was "entirely without merit."  (Id.)

[4] At this time, no formal request has been made with the U.S. Attorney's Office to move forward with an indictment for criminal contempt.  If Defendants' appeal is unsuccessful, the court will promptly call for such action.

Judgment based on Defendants' continued failure to comply with the contempt order. (Dkt. No. 279.) On August 30, 2013, that motion was denied, but Defendants were ordered to update the court on the steps they were taking to comply with the contempt decision. (Dkt. No. 342.) In that update, Defendants informed the court that they would not produce Defendant Neuberger, that they would not pay the assessed fines, and that they had no intention of taking any action to undo the effects of the BAG merger. Counsel repeated the argument, rejected by this court, that since (in Defendants' view) the merger had caused no substantive harm to Plaintiff, it was improper for the court to impose contempt sanctions even though Defendants had, admittedly, violated the terms of the injunction. (Dkt. No. 355.)

In response to Defendants' submission, Plaintiff filed a renewed motion for a default judgment, which is currently pending before this court. (Dkt. No. 359.) Since, for the reasons set forth below, the court will be ordering entry of judgment for Plaintiff based on Defendants' egregious misconduct during discovery, this motion will be denied as moot.

C.   <u>Discovery.</u>

While pursuing injunctive relief, Plaintiff has been attempting to conduct discovery to prepare for trial. Plaintiff has been thwarted at virtually every turn by Defendants' outrageous misconduct.  Specifically, Defendants have refused to produce Defendant Neuberger and other key witnesses for their depositions, and they have failed to produce documents available to them that are critical to Plaintiff's case.

1.   <u>Neuberger's Deposition.</u>

On July 19, 2012, Plaintiff served Defendant Neuberger with a notice of deposition scheduled to take place on October 18, 2012, in Springfield, Massachusetts.  (Dkt. No. 107.)  Defendant Neuberger, in response, indicated that he would not attend.  As a result, on October 10, 2012, Plaintiff filed a Motion to Compel.  (Dkt. No. 107.)  While that motion was pending, Defendants changed their position, Plaintiff withdrew its motion, and the first day of the deposition occurred on January 11, 2013, in Springfield.

However, at the time of Neuberger's deposition, Defendants had failed to produce a year's worth of Board of

Directors' Minutes. This dereliction was in direct violation of a June 28, 2012, order from the Magistrate Judge requiring them to do so. As of the date of Neuberger's deposition, Defendants had also failed to produce minutes from a crucial August 9, 2011, supervisory board meeting, as well as internal corporate e-mails that had been requested.[5] Because Plaintiff's counsel did not have these necessary documents, it was obliged to postpone the completion of Neuberger's deposition pending their production. The parties jointly filed two notices with the court acknowledging the need to continue the deposition to obtain the required discovery. (Dkt. Nos. 186 & 263.)

On June 27, 2013, Plaintiff sent Defendant Neuberger a notice to continue his deposition for July 12, 2013. However, on July 5, 2013, Defendants informed Plaintiff that they intended to file, and then did file, a Motion for a Protective Order. Defendants argued that Neuberger risked

---

[5] Although Defendants have produced some of these documents, they have still not done so completely and thus remain in violation of the June 28, 2012, court order. Several of the minutes produced are heavily redacted, and no privilege log respecting the redactions has been filed. Defendants have also failed to produce any tax returns or financial statements dated after June 30, 2011.

arrest if he came to the United States for the deposition because of the contempt order issued on April 11, 2013.  On July 6, 2013, Magistrate Judge Kenneth P. Neiman denied Defendants' Motion for a Protective Order.  (Dkt. No. 324.) Judge Neiman based his decision on four grounds: (1) the motion was not timely; (2) granting the motion would unfairly prejudice Plaintiff's efforts to prepare its case; (3) there was no less burdensome manner for Plaintiff to pursue this continued deposition; and (4) the court would not protect Defendant from his own contemptuous behavior.

Following the court order, defense counsel informed Plaintiff that Neuberger was unavailable for the July 12 deposition.  In their ensuing communications, Defendants confirmed that they would not produce Neuberger, despite Judge Neiman's denial of their motion for a protective order, until the contempt issue had been resolved and Neuberger could come to the United States without risking personal consequences for his acts of contempt.  According to Defendants, Judge Neiman's view notwithstanding, the protective order they sought should have been issued. Significantly, although the rules permit a party to seek

review by a district court judge of a magistrate judge's order, Fed. R. Civ. P. 72(a), Defendants did not do so. They simply disregarded it.

On August 12, 2013, a month after the deposition should have occurred, Defendants filed another Motion for a Protective Order seeking permission to hold the deposition via video-link.  (Dkt. No. 331.)  Judge Neiman again denied this renewed motion, (Dkt. No. 334), incorporated Plaintiff's opposition, (Dkt. No. 332), into its decision, and cited his earlier reasoning.  Neuberger continued to take the position, consistently rejected by the court, that given the potential contempt sanctions faced by him, it was improper for the court to require him to participate in discovery in person.

As a result of this conduct, Plaintiff filed its first Motion for Sanctions under Fed. R. Civ. P. 37. (Dkt. No. 327.)  Although Defendants thereafter moved for Summary Judgment, (Dkt. No. 366), they have still refused to cooperate, placing Plaintiff in the impossible position of having to respond to Defendants' dispositive motion without the opportunity to fully depose Neuberger, possibly the most

important witness in the case.

   2.  <u>Managing Agents' Depositions.</u>

   On July 19, 2012, Plaintiff served notices of deposition on Bolesh Skutnik, Brian Foley, and Art Henneberger.  The three sat on the Board of Directors for all U.S. Biolitec group entities.  Defendants have described Foley and Henneberger as "key accounting staff and managers." (Dkt. No. 152, at 12.) Skutnik is the U.S. General Counsel for Biolitec Group.

   All three witnesses attended the first day of their depositions on December 11, 2012, December 19, 2012, and January 17, 2013, respectively.  Because critical documents had not been produced, Plaintiff's counsel suspended each deposition.  In the joint filings previously referenced, the parties acknowledged the need for these continuances in light of Defendants' failure to provide discovery.

   In June 2013, Plaintiff asked Defendants for dates on which they would be amenable to continue the depositions of Foley and Henneberger.  One month later, Plaintiff reiterated its request but with respect to all three witnesses.  Based on Defendants' reply, (Dkt. No. 352, Ex.

3), Plaintiff proposed the last week of August for the depositions.

As August approached, Defendants suggested that the depositions be moved to early September.  (Dkt. No. 352, Ex. 5.)  At the end of August, though, Defendants changed course and simply refused to proceed with these depositions at all. Relying on the discovery deadline of July 12, 2013, Defendants declined to produce any of the three witnesses for their continued depositions.[6]  (Dkt. No. 352, Ex. 7.) In other words, after proposing the September date themselves as a convenience for all parties, and knowing of the July 12 cut-off date, Defendants recanted at the last minute and refused to proceed.  In response, Plaintiff filed another Motion for Sanctions pursuant to Fed. R. Civ. P. 37. (Dkt. No. 350.)

III.  <u>DISCUSSION</u>

---

[6] Although Judge Neiman declined to issue a formal extension of the discovery deadline, he did inform the parties that they were free to continue discovery upon mutual agreement.  (Dkt. No. 306.)  Defendants have attempted to snooker Plaintiff by negotiating past the deadline, agreeing to an informal extension, and then retracting their agreement and citing the deadline to avoid producing essential witnesses.

While it is not common for a court to impose a default judgment as a remedy for discovery abuse, the sanction is supported by well-founded authority and is fully justified in this case, especially when Defendants' discovery misconduct is viewed in the landscape of its overall behavior during this litigation.  The analysis below will begin with an overview of the applicable law and a summary of the factors the court must weigh in determining the appropriate sanction for discovery abuse.  It will then proceed to apply these factors to Defendants' conduct in refusing to produce Neuberger for deposition in person and in disingenuously ducking their agreement to produce the managing agents.

A.   Discovery Sanctions.

Fed. R. Civ. P. 37(d)(1)(A) provides that a court may order sanctions where "a party or party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition."  A party is not excused from appearing "on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order."  Rule

37(d)(2).  Sanctions for failing to comply with this rule may include entry of a default judgment against the violating party.  Rule 37(b)(2)(A)(I)-(vi) & (d)(3).  This sanction "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).

The First Circuit has enumerated a number of factors to be weighed to determine whether the twin goals, punishment and deterrence, justify a particular sanction in a specific factual context.  Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir. 2010).  These factors help distinguish good faith attempts to comply with discovery obligations from deliberate, bad faith refusals to do so.  See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006).  The factors serve as a guide and need not be applied mechanically.  Id.

The Court of Appeals has directed trial judges to consider: (1) the severity of the violation; (2) the

-17-

legitimacy of the party's excuse for failing to comply; (3) whether the violations have been repeated; (4) the deliberateness of the misconduct; (5) any mitigating excuses; (6) prejudice to the other side and to the operations of the court; and (7) the adequacy of lesser sanctions.  <u>Vallejo</u>, 607 F.3d at 8.  Procedurally, the court should consider (1) whether the offending party was given sufficient notice, and (2) whether the offending party has been given an opportunity to explain its noncompliance or argue for a lesser penalty.  <u>Id.</u>

Analysis of each of these factors confirms that default judgment is the proper sanction here.  Obviously, the procedural prerequisites have been satisfied.  Plaintiff has filed a total of four motions seeking default judgment, two on the issue of discovery.  Defendants have taken advantage of their opportunity to respond at length to all the arguments offered in these motions.  They have been on notice that default judgment was a remedy sought by Plaintiff since its first motion was filed in May 2013.  The court also explicitly warned Defendants that default judgment was a potential remedy in light on their refusal to

comply with court orders.  (Dkt. No. 342.)  In sum, no argument can be made that Defendants have been caught off guard or deprived of an opportunity to respond fully.  They have suffered no procedural prejudice.

The substantive factors, though they require more expanded discussion, offer no less compelling support for the sanction of default judgment here, as a step-by-step analysis fully demonstrates.

1.    The Failure to Produce Defendant Neuberger and
      Default Judgment.

Defendants' primary argument is that Neuberger cannot attend his deposition given the outstanding warrant for his arrest based on the contempt sanction issued against him for proceeding with the Austrian merger in defiance of the court's preliminary injunction.  They argue, in essence, that Neuberger is relieved of any obligation to attend his deposition since the Magistrate Judge issued an erroneous order, never appealed, that denied his Motion for a Protective Order.

This argument is typical of the looking-glass logic employed by Defendants for more than a year now.  First, the

contention is based entirely on the happenstance that
Neuberger is -- for the moment, but probably not forever --
outside the physical grasp of the court and therefore in a
position to defy its orders.  If Neuberger were a citizen of
the United States, living within the boundaries of this
country, he would have long ago been taken into custody and
held until he made reasonable efforts to comply with the
court's injunction, or until this court reconsidered, or a
higher court reversed, the order holding him in contempt.
It is only Neuberger's own misconduct in defying the
injunction and then refusing to appear at the hearing on
Plaintiff's motion for contempt -- out of fear that he might
have to face the consequences of his own gross misconduct --
that has placed him in the awkward position he now finds
himself.

    It compounds absurdity for him to press his position
one step further and now argue that based on his defiance of
the injunction and his refusal to face the resulting motion
for contempt, he is now absolved from complying with
discovery, because compliance would expose him to the
consequences of his own contemptuous behavior.

The speciousness of Defendants' argument is further illuminated by a review of the factors identified by the First Circuit that govern this situation.

a.   Legitimacy of Excuse and Deliberateness.

The first two factors, the legitimacy of Defendants' excuse for, and the deliberateness of their actions in, frustrating discovery can be considered together.

A litigant's good faith attempt to comply with a discovery rule is generally a legitimate excuse for an inadvertent or unintentional violation.  For example, in Malot v. Dorado Beach Cottages Assoc., 478 F.3d 40 (1st Cir. 2007), the plaintiffs consistently and promptly advised the court and the defendants that the dates of scheduled depositions were problematic.  Although the plaintiffs kept requesting extensions, and then one plaintiff failed to be deposed within the discovery deadline, they were not actively attempting to ignore any court order.  Id. at 44.  They genuinely attempted to comply with their discovery obligations and, in pointing this out, offered a legitimate excuse to avoid a default judgment.  Id. at 44-45.

Certainly, there can be instances where objections to

discovery serve as a legitimate excuse for non-compliance. However, the rule is explicit: the party must have a pending motion for a protective order to invoke that justification. Fed. R. Civ. P. 37(d)(2).  This underscores the principle that a party acting in good faith, attempting to work within the rules, will not face a harsh sanction.

Conversely, where the defendant's wrongful intentions are clear from the record as a whole, no credence is given to their purported excuse.  In Global NAPs, Inc. v. Verizon New England, Inc., 603 F.3d 71 (1st Cir. 2010), the defendants were sanctioned with default judgment for willfully concealing and destroying evidence.  The defendants claimed that they were "guilty only of poor record keeping and accidents," despite overwhelming evidence, including expert testimony detailing the destruction of electronic documents, demonstrating otherwise.  Id. at 94.  The basic rule is obvious: a party cannot avoid a Rule 37 sanction where the excuse is contradicted by a record evidencing bad faith.

More pertinent here, a general fear of criminal prosecution, particularly after a court has rejected that as a basis to abstain from discovery, is not sufficient to free

a party from her obligations.  Particularly telling is Linde
v. Arab Bank, PLC, 269 F.R.D. 186 (E.D.N.Y. 2010), where the
Eastern District of New York sanctioned a defendant for
withholding relevant materials.  There, sanctions included:
the imposition of a number of adverse inferences against
Defendant, the preclusion of certain evidence, and the
allowance of a number of the plaintiff's Requests for
Admissions.  This ruling issued despite the defendant's claim
that it feared criminal prosecution under bank secrecy laws
if it turned over the documents.  Id. at 196.  The court
noted that "[t]his court has already rejected defendant's
rationale for withholding the documents," and therefore
"significant sanctions are both 'just' and 'commensurate'
with defendant's non-compliance."  Id. at 197 (citations
omitted).

     In this case, counsel for Neuberger readily admits that
Defendants are not producing Neuberger because they believe
the court should have issued a protective order absolving him
from any obligation to appear in person for his deposition.
In essence, Defendants contend that the court's failure to
issue this protective order justifies Neuberger in engaging

in self help by declining to attend.  Defendants concede that their actions have been knowing and deliberate.  Given this, the first two factors identified by the First Circuit, the legitimacy of the excuse and the degree of deliberateness, weigh heavily against Defendants.

      b.   <u>Severity of Actions and Repetition of Behavior.</u>

     The next factors to consider are the severity and consistency of the violations.  Only conduct that is either so egregious on its face or representative of a pattern of similar behavior deserves default judgment.  <u>See</u> <u>Crossman v. Raytheon Long Term Disability Plan</u>, 316 F.3d 36, 39 (1st Cir. 2002)("[T]he court must consider the nature and number of violations on the part of counsel prior to taking such action.")(citations omitted).

     Sometimes courts face misconduct that, while frustrating, is not particularly severe.  That was the case in <u>Companion Health Services, Inc. v. Kurtz</u>, 675 F.3d 75 (1st Cir. 2012), where the plaintiff moved for sanctions against litigants for failing to meet a single discovery cut-off date.  The litigants were unrepresented at the time of that deadline.  <u>Id.</u> at 86.  While the court suggested that there

were other facts in the record that could have justified a default judgment, relying solely on that one instance was not enough.  Id. at 84-85.  "This would be a different case if . . . the District Court had supportably found that they themselves had engaged in a deliberate pattern of stonewalling with the aim of frustrating effective discovery and the progress of the case."  Id. at 85.

On the other end of the spectrum is a case like Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45 (1st Cir. 2009), where the defendants refused to produce certain documents.  After the court ordered the production, the defendants still resisted.  Id. at 49-50.  Over time, the defendants violated a number of court orders regarding discovery, with the result that default judgment was eventually entered as a sanction.  Id.  "The court's choice of sanctions as well as the sternness of its warnings gradually escalated over the course of the litigation in response to defendants' persistently troublesome conduct."  Id. at 52.  In the end, the defendants' consistent refusal to abide by the court's rulings warranted the heavy sanction.  See also Int'l Bhd. of Elec. Workers, Local Union No. 545 v.

<u>Hope Elec. Corp.</u>, 380 F.3d 1084, 1106 (8th Cir. 2004)
(entering default judgment against the defendants who refused
to produce discovery, refused to participate in negotiations
prior to arbitration, refused to participate in arbitration,
and consistently violated court orders).

    Defendants' conduct in this case lines up neatly with
<u>Arlequin</u> and <u>Hope Electrical Corporation</u>.  Defendant
Neuberger did not just refuse to attend his deposition, but
continued his obduracy even after his motion for protective
order was denied, citing a justification that is inadequate
on its face.  The warnings to Defendants, particularly by the
extraordinarily patient Magistrate Judge, have gradually
increased in response to Defendants' persistently troublesome
conduct.  See <u>e.g.</u>, (Dkt. 5/13/11)("The record demonstrates
that Plaintiff has been extremely diligent in attempting to
make service in the face of what appears to be deliberate
evasiveness on the part of Defendants Biomed and
Neuberger."); (Dkt. No. 208)("[T]he court finds Defendants
Biolitec, Biomed Technology, and Wolfgang Neuberger's
opposition inappropriately hyperbolic and overwrought . . .
."); (Dkt. No. 288)("[T]he court finds inappropriate, if not

unbecoming of an officer of the court, Defendants' counsel's
threat to sue Bernard should he not voluntarily testify."); 
(Dkt. No. 321)("It was the court's intention when granting in
part Defendants' First Motion to Compel that any subpoenaed
documents would be limited as well to 'claims raised by
Plaintiff in . . . the instant matter.'(See Docket Entry 289)
While that intention may not have been made crystal clear by
the court, it would have been anomalous indeed for the court
to have limited the inquiries at the depositions, as it did,
while at the same time giving Defendants free rein to go
beyond that limitation with regard to sought-after
documents."); (Dkt. No. 334)("[T]he court is unwilling to
accommodate Defendants' blatant attempt to have it facilitate
Neuberger's wish to evade the consequences of his
contemptuous behavior.").

In sum, the record confirms the extreme severity of
Defendants' actions and the repeated instances of their
misconduct.

c.   <u>Prejudice to Plaintiff.</u>

The Defendants' misconduct during discovery has not only
been offensive in itself but has resulted in severe,

-27-

manifest, and unfair prejudice to Plaintiff.  A party's failure to attend his or her own deposition presents probably the grossest example of prejudicial discovery misconduct. See e.g., Perez v. Berhanu, 583 F. Supp. 2d 87 (D.D.C. 2008); Unifi Export Sales, LLC v. Mekfir Int'l Co., 233 F.R.D. 443 (M.D.N.C. 2005); Coastal Mart, Inc. v. Johnson Auto Repair, Inc., 196 F.R.D. 30 (E.D. Pa. 2000).

Here, Plaintiff's inability to adequately depose Neuberger undermines its capacity to present its case. Plaintiff alleges, without significant dispute, that he directs and controls the actions of the other Defendants. Neuberger, in Plaintiff's view, is responsible for choreographing Defendants' campaign to elude paying the New York judgment by looting Defendant BI of its assets and then moving BAG from Germany to Austria.

Defendants' request to hold the deposition over video-link does not change this analysis.  In fact, Defendants have already been told that the option is inappropriate since (among other reasons) it would not allow Plaintiff or the court to assess the witness's credibility adequately.  (Dkt. No. 334.)

Finally, the prejudice to Plaintiff is compounded when viewed in conjunction with Defendants' other discovery violations.  Not only have Defendants refused to produce additional witnesses, but they have also refused to produce relevant documents, including un-redacted versions of two Board of Director's minutes, a privilege log respecting the redactions, and BAG's tax returns or financial statements for the period following June 30, 2011.

Defendants' flouting of its discovery obligations is compounded by the pendency of Defendants' Motion for Summary Judgment, (Dkt. No. 366), which Plaintiff is faced with having to oppose without the basic opportunity to fully depose the most significant witness in the case.  It simply cannot be argued that Defendants' failure to produce discovery has had anything but a devastatingly prejudicial impact on Plaintiff.

> d.   Adequacy of Lesser Remedies.

If a sanction less drastic than default will accomplish the goals of punishment and deterrence, such a penalty is, of course, appropriate.  Nonetheless, an initial sanction of default judgment may still be justified where the

circumstances require it.  As the First Circuit has said, if "the sanction fits the misconduct, a trial court is not obliged to withhold the sanction until it has first slapped the offender on the wrist."  Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38-39 (1st Cir. 2012); citing Kurtz, 675 F.3d at 84; cf. Damiani v. R.I. Hosp., 704 F.2d 12, 15 (1st Cir. 1983)("There is nothing in [Rule 37(b)] that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried.").

In this case it is clear that any of the other remedies identified in Rule 37 would fail to address the seriousness of Defendants' misconduct.  Defendants' behavior has, in fact, clearly illustrated the futility of any lesser sanction.  The contempt sanction, for example, has merely prompted Defendants' to continue ignoring the court's injunction.  See (Dkt. No. 355.)

Staying the matter pending the deposition, pursuant to Rule 37(b)(iv), would actually reward Defendants with an additional delay.  They have consistently attempted to stall this litigation through their dilatory tactics.  See (Dkt.

5/13/11); (Dkt. 11/22/11); (Dkt. 6/28/12); (Dkt. No. 195);
(Dkt. No. 196); (Dkt. No. 290); (Dkt. No. 306); (Dkt. No.
321); (Dkt. No. 324); (Dkt. No. 334).  Furthermore,
compelling Neuberger to attend his deposition would be a
wasted effort, since he has already shown his determination
to ignore similar court orders.  (Dkt. No. 242.)

Finally, evidentiary sanctions suggested in the Rule,
such as striking Neuberger's testimony, would not adequately
sanction Defendants' violations.  Indeed, this approach would
actually reward Neuberger's conduct, since he would be
officially relieved of the obligation to come to this
country, something he is determined to avoid in any event.

The only sanction that adequately addresses Defendants'
refusal to produce Neuberger for deposition, and the only
sanction that would discourage similar behavior in the future
from other litigants, is entry of default judgment.  The
necessity for this sanction is further confirmed by an
examination of other discovery misconduct by Defendants.

2.   The Depositions of Key Managing Agents.

Plaintiff's additional Motion for Sanctions under Fed.
R. Civ. P. 37 is anchored on Defendants' failure to provide

witnesses Foley, Henneberger, and Skutnik for the
continuation of their depositions.

Defendants raise two claims in opposition to this
motion.  First, the witnesses, they say, are not "managing
agents" and thus Rule 37 does not provide a remedy.  Second,
Defendants are not required to provide these witnesses since
the discovery deadline of July 12, 2013, has passed.

As to the first argument, the three identified
individuals clearly are "managing agents."  The parties
correctly define the term as: (1) "a person invested by the
corporation with general powers to exercise his judgment and
discretion in dealing with corporate matters"; (2) "who could
be depended upon to carry out his employer's direction to
give testimony at the demand of a party engaged in litigation
with the employer"; and (3) "who can be expected to identify
himself with the interest of the corporation rather than with
those of the other parties."  Reed Paper Co. v. Proctor &
Gamble Distrib. Co., 144 F.R.D. 2, 4 (D. Me. 1992) citing
Rubin v. Gen. Tire & Rubber Co., 18 F.R.D. 51, 56 (S.D.N.Y.
1955)(citation omitted).  When there is a dispute, any
"doubts about an individual's status as a 'managing agent,'

at the pre-trial discovery stage, are resolved in favor of the examining party."  In re Honda Am. Motor Co., Inc., Dealership Relations Litig., 168 F.R.D. 535, 540 (D. Md. 1996)(citation omitted).

Defendants offer three arguments purporting to justify their contention that these three individuals are not "managing agents."  First, Witness Henneberger cannot be a "managing agent" since he has not worked for any member of Biolitec Group since August 9, 2013.  Second, Plaintiff's argument contradicts its claim that Defendant Neuberger is singularly responsible for all of Defendants' actions. Finally, the three have never had power to exercise judgment and discretion over Biolitec AG, Neuberger, or Biomed Technology Holdings, Ltd.  While Defendants concede that they "certainly were 'managing agents' of Biolitec, Inc," they resigned from those positions on August 12, 2013.  (Dkt. No. 357, at 5.)

Defendants' arguments fall flat for several reasons. First, Defendants explicitly admit that the three witnesses were "managing agents" of Defendant BI until August 12, 2013. The events underlying this motion, such as the initial

depositions and the agreement to continue them, occurred before that date.  It is the witnesses' status at the time of the deposition that is determinative.  See <u>U.S. v. Afram Lines (USA), Inc.</u>, 159 F.R.D. 408, 414 (S.D.N.Y. 1994)(emphasizing the phrase "at the time of taking the deposition" in Rule 32(a)(2)(<u>citing</u> <u>Reed Paper</u>, 144 F.R.D. at 2)).

Furthermore, Plaintiff has demonstrated that the witnesses meet the relevant requirements to be considered "managing agents."  First, all three were officers and directors of BI and have been specifically identified by Defendants as "key accounting staff and managers throughout the world."  (Dkt. No. 152 at 12)  Second, the witnesses are not only technically qualified to give testimony at BAG's direction, but <u>have</u> actually done so in this case.  (Dkt. Nos. 23, Ex. 3; 57; 58; 68; 100; 144, Ex. 3; 147; 160; 215, Ex. 3; 282, Ex. 2; & 307, Ex. 4.)  Finally, in this case and in BI's chapter 11 case in bankruptcy court (No. 13-11157 (DHS)), the witnesses have been supportive of Defendants' interests and hostile to Plaintiff.

Finally, even if some ambiguity may exist as to whether

these witnesses satisfy the "managing agent" test, it is, at minimum, a close question, and that is enough.  See Felman Prod., Inc. v. Indus. Risk Ins., No. 309-cv-00481, 2010 WL 5110076, at *2 (S.D.W.Va. Dec. 9, 2010)("The courts are in agreement that the burden is on the discovering party to establish the status of the witness, and doubts are resolved in favor of the discovering party.")(citations omitted). Defendants' argument that it is relieved of the obligation of producing these three witnesses because they are not managing agents does not hold water.

Given their status, a review of the factors identified by the First Circuit confirms that the sanction of default judgment is appropriate on the ground that Defendants have improperly shielded these three witnesses from deposition.

a. Legitimacy of Excuse and Deliberateness.

Defendants contend that the discovery deadline has passed, and they thus have no obligation to produce these witnesses.  There are three problems with this claim.

First, rather than relieving Defendants from their obligation, their failure to meet the discovery deadline provides yet another instance where they have ignored a court

order.  The parties were explicitly ordered to complete all
"previously noticed but canceled or suspended depositions" by
July 12, 2013.  (Dkt. No. 290.)  Despite Plaintiff's attempt
to work with defense counsel in June to schedule the
depositions, Defendants failed to comply.  Defendants cannot
now excuse their behavior by citing a deadline that they
themselves deliberately avoided.

Second, Defendants agreed to produce these witnesses
irrespective of the discovery deadline.  A generally
applicable limit may be lifted "where the parties stipulate
or the court orders otherwise."  <u>Vazquez-Rijos v. Anhang</u>, 654
F.3d 122, 130 (1st Cir. 2011).  The failure of a party to
comply with its own agreement is sanctionable by a court.
<u>Id.</u>  Since the court left open the possibility that the
parties could continue discovery by agreement, (Dkt. No.
306), and the parties explicitly did so, (Dkt. Nos. 186 &
263), Defendants' obligation was not extinguished by the
passing of the discovery cut-off date.  To conclude otherwise
would be to allow a party to circumvent her discovery
obligations by stalling until the deadline passes.

Finally, Defendants do not even take their own argument

-36-

seriously.  Defendants insist that the discovery deadline was a strict cut-off, and its passing discharges their obligation.  Despite these protestations, on October 18, 2013, they filed an Emergency Motion to Modify [the] Summary Judgment Briefing Schedule.  (Dkt. No. 363).  To justify their position, they argued,

> In the Court's June 25, 2013 order denying the Biolitec's assented-to motion to extend pre-trial discovery deadlines [ECF 306], the Court stated that the "parties are free to mutually agree to the requested extensions, but those extensions will not have the imprimatur of the court lest they lead to yet further requests for extensions of the remaining schedule."  The parties thereafter mutually agreed to extend certain deadlines, including the deadline to complete expert depositions.  The expert depositions are currently scheduled to take place on November 4 and 5, 2013.

(Dkt. No. 363 at 2).  As a matter of equity, the court cannot allow Defendants simultaneously to insist upon the immutability of a discovery deadline and to urge flexibility when it suits their needs.

In sum, no legitimate explanation justifies Defendants' deliberate refusal to produce these three witnesses for deposition.

      b.   <u>Severity of Action and Repetition of Behavior.</u>

Although the failure to produce these witnesses is not as severe as the refusal to produce Neuberger, the manner of dodging these depositions has its own distinctly sour aroma. While Defendants could have moved for a protective order, or insisted that the depositions end after one day, they chose to string Plaintiff along.  After the depositions began but needed to be suspended due to Defendants' failure to provide documents, Defendants agreed to a continuance and confirmed this with the court.  Throughout the summer, they made a show of cooperating as they attempted to arrange new dates with Plaintiff.  Plaintiff was led to believe that it would have the opportunity to complete deposing these witnesses before their opposition to summary judgment was due.  Instead, despite months of suggesting otherwise, Defendants refused to proceed at the last minute.  As discussed previously, this is just one example of Defendants' unprofessional conduct and furthers the finding that their behavior has been contumacious.

### c. Prejudice to Plaintiff.

The failure to produce these witnesses compounds the prejudice to Plaintiff.  As noted, Defendants have relied on

these witnesses extensively in the course of this case.  More
recently, they have relied on them in their Motion for
Summary Judgment.  (Dkt. No. 366.)  In support of that
Motion, they filed: two affidavits signed by Bolesh Skutnik
(Dkt. No. 367, Ex. 4 & 5); a letter from Bolesh Skutnik (Dkt.
No. 367, Ex. 6); a declaration signed by Art Henneberger
(Dkt. No. 367, Ex. 7); and a letter to Bolesh Skutnik (Dkt.
No. 367, Ex. 11).  They also rely on these exhibits in their
Statement of Material Facts.  (Dkt. No. 368.)

It would be manifestly unfair for the court to consider
these exhibits while Plaintiff has not had a full opportunity
to depose the witnesses.  Furthermore, given the involvement
these individuals have had in Defendants' business dealings,
it is likely Plaintiff would have discovered information
relevant to its own case-in-chief if given a full opportunity
to depose them.  The prejudice suffered by Plaintiff has been
substantial.

### d.   Adequacy of Lesser Remedies.

If this were the initial or sole instance of misconduct,
the court might consider as a sanction simply striking the
witnesses' exhibits and precluding them from testifying at

trial.  Rule 37(b)(2)(A)(ii).  In light of Defendants'
consistent misconduct, that sanction does not adequately
penalize Defendants.  Default judgment is fully justified as
a sanction for these violations, when the specific misconduct
related to these witnesses is viewed in the totality of the
circumstances.

B.   <u>Contempt.</u>

     Plaintiff's final motion for sanctions stems from
Defendants' continued defiance of this court's order of
contempt.  The court denied a previous motion seeking the
same remedy, but explicitly left open the possibility for
reconsideration.  (Dkt. No. 342.)  While Defendants fulfilled
their obligation to submit a status report, they simply
reaffirmed their intent to maintain their defiance of the
court's order.  As such, their actions serve as further proof
of their bad faith, and are relevant in the decision to enter
default judgment.

     The earlier denial of Plaintiff's motion for default
judgment opted for "a restrained approach" to give Defendants
more time to update the court and comply with the prior
orders.  Relying on <u>Hovey v. Elliot</u>, 167 U.S. 409, 444-45

(1897), the order noted that generally a court lacks "inherent power to strike a defendant's answer and enter a default judgment as a sanction for contempt." (Dkt. No. 342 at 4.) It also expressed doubts as to whether HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908 (1st Cir. 1988), the case primarily relied on by Plaintiff, applied here. (Dkt. No. 342 at 5.) As a result, the court denied the motion.

It is well established that civil contempt sanctions should seek "to coerce compliance rather than to punish past noncompliance." Hawkins v. Dep't of Health & Human Servs., 665 F.3d 25, 32 (1st Cir. 2012)(citations omitted). Indeed, entry of default judgment against a defendant as a sanction for contempt, when the contempt is unrelated to the merits of the case, is generally not an appropriate tool to force compliance. See Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 916-17 (9th Cir. 1987).

However, a federal district court does have the inherent power to control its docket and to impose "appropriate sanction(s) for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). As the

Seventh Circuit has observed, "[I]n appropriate cases this power would even permit a court to impose the ultimate sanction of a grant of judgment."  Diettrich v. NW Airlines, Inc., 168 F.3d 961, 964 (7th Cir. 1999).

Although the court previously suggested that HMG Prop. Investors is not directly on point, the case did offer a broad view of this inherent power.  As the First Circuit explained,

> We start with the proposition that the rules of civil procedure do not completely describe and limit the power of district courts.  Such courts have inherent powers, rooted in the chancellor's equity powers, to process litigation to a just and equitable conclusion.  In general, except where a statute or rule holds to the contrary, federal courts enjoy the inherent power to provide themselves with appropriate instruments required for the performance of their duties.

HMG Property Investors, 847 F.2d at 915-16 (internal citations and quotations omitted); see also John's Insulation v. L. Addison & Assoc., 156 F.3d 101, 108-109 (1st Cir. 1998)(affirming dismissal of a complaint and the entry of default judgment on the defendant's counterclaim based on the court's "inherent powers" to penalize a party's "protracted delay and repeated violation of court orders").

These broad pronouncements respecting a court's inherent power to ensure the orderly flow of the judicial process are telling.  At a minimum, they justify taking into consideration the Defendants' refusal to comply with the court's contempt order when fashioning an appropriate remedy for their discovery violations.  That is, even if the violation of the contempt order on its own were not an independent justification for an entry of default judgment, Defendants' defiance of the order is probative on the issue of Defendants' willfulness and therefore relevant in ruling on the Rule 37 motions.

Defendants have made it crystal clear in their status report that they do not intend to comply either with the court's preliminary injunction or with the orders issued by the court to compel compliance with the preliminary injunction.  They have the power to undo the effects of their merger and to return the situation substantially to where it was before the merger took place in defiance of the court's order.  In other words, they have the ability to remedy their failure, or refusal, to honor this court's order.  They flatly refuse to do this.

Defendants have reiterated their refusal to produce
Defendant Neuberger and confirmed their unwillingness to pay
the assessed fines.  Their disagreement with the court's
preliminary injunction, even after its affirmance by the
First Circuit, and their disagreement with the contempt
sanction, trumps, in their view, both the orders of this
court and of the Court of Appeals.  At the end of this long
road of blatant misconduct, there is only one terminus: entry
of judgment by default.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for
Sanctions Pursuant to Fed. R. Civ. P. 37, (Dkt. No. 327),
and Plaintiff's Motion for Sanctions for Failure of Managing
Agents Brian Foley, Art Henneberger, and Bolesh Skutnik to
Appear for Depositions, (Dkt. No. 350), are hereby ALLOWED.
Plaintiff's Motion for Default Judgment Based on the Court's
August 30, 2013, Memorandum and Order and Defendants' October
1, 2013 Status Report, (Dkt. No. 359), is DENIED as moot.

The clerk shall enter judgment for Plaintiff on the issue
of liability.  Plaintiff shall file a memorandum setting
forth its position on the issue of damages no later than

-44-

January 31, 2014.  Defendants' response will be filed no later than February 17, 2014.  The clerk will schedule a non-evidentiary hearing on the issue of damages for a date prior to March 1, 2014.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge