```
                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


ANGIODYNAMICS, INC.,            )
          Plaintiff             )
                                )
                                )
              v.                ) C.A. NO. 09-cv-30181-MAP
                                )
BIOLITEC AG,                    )
WOLFGANG NEUBERGER,             )
BIOLITEC, INC., and             )
BIOMED TECHNOLOGY HOLDINGS,     )
LTD.,                           )
          Defendants            )
```

<u>MEMORANDUM AND ORDER</u>
<u>REGARDING DAMAGES</u>

March 18, 2014

PONSOR, U.S.D.J.

I. <u>INTRODUCTION</u>

On January 14, 2014, this court entered default judgment against Defendants on the issue of liability. <u>Angiodynamics, Inc. v. Biolitec AG</u>, -- F. Supp. 2d --, 2014 WL 129035 (D. Mass. Jan. 14, 2014). Counsel then appeared for argument on February 24, 2014, to set forth their positions on the question of damages. Because the allegations in the complaint are accepted as true, Plaintiff is entitled to recover actual damages, trebled under Mass.

Gen. Laws chapter 93A; pre-judgment interest; and reasonable attorney's fees and costs. The court will therefore enter judgment for Plaintiff in the amount of $74,920,422.57.

## II. BACKGROUND

The background of this litigation has been exhaustively detailed on a number of occasions. See Angiodynamics, Inc. v. Biolitec AG, 910 F. Supp. 2d 346 (D. Mass. 2012), aff'd, 711 F.3d 248 (1st Cir. 2013); Angiodynamics, Inc. v. Biolitec, Inc., 2011 WL 3157312 at *1-2 (D. Mass. July 25, 2011). The facts relevant to the issue of damages are as follows.

On September 20, 2012, the Northern District of New York found Defendant Biolitec, Inc. ("BI") liable to Plaintiff in the amount of $16,463,846.94, plus pre-judgment interest, for failing to indemnify Plaintiff as required under the parties' Supply and Distribution Agreement ("SDA"). Angiodynamics, Inc. v. Biolitec, Inc., No. 1:08-cv-0004, Mem. & Order (N.D.N.Y. Sept. 27, 2011). This damage award was based on amounts Plaintiff had previously been required to pay to settle litigation brought against it by two entities -- VNUS and Diomed -- that BI, in violation

of the SDA, had failed to hold Plaintiff harmless against. One year later, that court entered partial, final judgment for Plaintiff in the amount of $23,156,287.00. <u>Angiodynamics, Inc. v. Biolitec, Inc.</u>, No. 1:08-cv-0004, Partial J. (N.D.N.Y. Nov. 8, 2012). BI subsequently appealed the decision to the Second Circuit Court of Appeals.

In January 2013, with that judgment still outstanding, BI filed for bankruptcy in the U.S. Bankruptcy Court for the District of New Jersey. (Chp. 11 Pet., Dkt. No. 400, Ex. 3.) On April 3, 2013, the bankruptcy court appointed a trustee, pursuant to 11 U.S.C. § 1104, and removed control of the company from Defendant Neuberger.

The trustee, on behalf of BI, entered into a settlement agreement with Plaintiff on July 16, 2013. (Settlement Agreement, Dkt. No. 400, Ex.7.) As part of that settlement, Plaintiff agreed to forego efforts to seek monetary damages against BI in the New York litigation -- BI apparently had few assets at any rate -- with the understanding that Plaintiff would instead pursue its remedies against BI and the other Defendants in this forum. In return, BI agreed to

withdraw its appeal before the Second Circuit. (Id.) On August 9, 2012, the Bankruptcy Court approved the settlement. (Bankr. Ct. Approval, Dkt. No. 400, Ex. 8.) Two weeks later the Second Circuit dismissed BI's appeal. (Ct. App. Mandate, Dkt. No. 400, Ex. 2.) At that point, the New York judgment became final.

In the litigation before this court, Plaintiff has attempted to recover the New York judgment from Defendants. Plaintiff accused Defendants Biolitec AG ("BAG"), Biomed Technology Holdings, Ltd. ("Biomed"), and Wolfgang Neuberger -- all entities closely associated with BI -- of (among other things) wrongfully diverting assets from BI in an effort to render BI judgment-proof and escape paying the New York judgment. The specific claims asserted by Plaintiff in this case include tortious interference with a contract, fraudulent transfer, and violation of Mass. Gen. Laws chapter 93A. Plaintiff contends that the close relationship among the parties and their course of conduct permits it to reach through the corporate structure and, as the phrase goes, "pierce the corporate veil."

After nearly five years of litigation characterized by

increasingly recalcitrant behavior on Defendants' part, the court allowed two of Plaintiff's Motions for Default Judgment stemming from Defendants' bad-faith behavior during pre-trial discovery. Angiodynamics, Inc. v. Biolitec AG, -- F. Supp. 2d --, 2014 WL 129035 (D. Mass. Jan. 14, 2014). After entering judgment on the issue of liability for Plaintiff, the court heard argument on damages on February 24, 2014. Following this, the court provided additional time for Defendants to file a sur-reply, (Dkt. No. 416), and took the matter under advisement.

### III. DISCUSSION

Since the court entered default judgment against Defendants on the issue of liability, it is obliged to accept the allegations in the complaint as true. McKinnon v. Kwong Wah Rest., 83 F.3d 498, 506 n.5 (1st Cir. 1996); see also Oritz-Gonazalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002). Plaintiff contends that, given this, the damage calculation in the case is straightforward: Defendants owe the $23 million in damages awarded in the Northern District of New York, trebled under chapter 93A, along with pre-judgment interest, attorney's fees, and

costs.

Defendants, citing principles of res judicata, argue that they cannot be "bound" by the New York judgment.[1] In addition, they reprise several arguments the court has already rejected, attempting to demonstrate substantively that Plaintiff has failed to assert any valid cause of action. The facial substantive deficiencies in the complaint, Defendants say, make it improper to award Plaintiff any remedy, even though the court has defaulted them due to their pretrial misconduct. Analysis of Defendants' arguments quickly reveals their flaws.

A. "Res Judicata" Defense

Defendants broadly assert that the New York judgment cannot provide the basis for an award of damages because they did not have a full and fair opportunity to litigate that case through appeal. Implicitly tied up in this argument is the assumption that Plaintiff seeks through this

---

[1] Defendants misapply the term "res judicata." In fact, they are essentially arguing that the New York judgment cannot form the basis of any damage award against them, because they were personally unable to appeal it. The court will consider the substance of Defendants' argument despite its dubious label.

litigation to enforce the New York judgment; Plaintiff, they say, is essentially invoking the doctrine of res judicata to preclude them from defending themselves. In their view, the parties must now re-litigate the issue of whether the Supply and Distribution Agreement obligated BI to defend and indemnify Plaintiff and whether BI breached that contract. Defendants concede that these issues were the subject of the extensive litigation in the Northern District of New York, but they take the position that, because BI's trustee in bankruptcy settled the appeal of the New York judgment to the Second Circuit over their protest, this court is now barred from using the judgment in calculating damages.

This argument has no merit. First, and most importantly, Plaintiff is not seeking to enforce the New York judgment by applying the doctrine of res judicata, or so called "claim preclusion." Instead, now that the court accepts as true Plaintiff's allegations that Defendants deliberately and intentionally looted BI to ensure that it would have no funds to pay any judgment emerging from the New York litigation, Plaintiff points to the damage award in the New York case as the starting point for the calculation

of the damage award here.  By identifying the New York judgment in this way, Plaintiff has not, in any sense, invoked the doctrine of res judicata: it has used the New York judgment as the basis for establishing the value of the SDA -- the contract that is the subject of Plaintiff's tortious interference claim.  It is perfectly obvious, in fact, that the New York litigation, which was pursued on theories entirely separate from the causes of action in this court, lacked the overlapping features that would qualify it even for consideration of any traditionally recognized preclusive effect.  By setting up the irrelevant issue of res judicata, and then pointing out that its elements have not been satisfied, Defendants have constructed the classic straw man.

Defendants' argument that they were denied a full and fair opportunity to litigate the New York case through appeal is also without support.  It must be noted that Wolfgang Neuberger, a co-Defendant in this case, was aware of and, through his position with BI, participated in the New York litigation at every stage.  Neuberger cannot dispute that he worked actively with BI's counsel throughout

the NY action up to and including the entry of judgment against BI.  (Dkt. No. 345, Ex. 7.)  He also was involved in BI's bankruptcy proceedings until the Bankruptcy Judge found it necessary to supplant him and appoint a trustee to protect BI's interests.  Once that occurred, the trustee stepped into the shoes of BI and represented BI.  11 U.S.C. § 1106; see also In re Lowry Graphics, Inc., 86 B.R. 74, 76 (S.D.Tex. 1988).  The trustee's decision to settle that case and dismiss the appeal thereafter constituted a valid and legally binding decision of the corporation itself.  The New York judgment, entered and affirmed by all courts properly exercising their jurisdiction, now represents the unsatisfied value of the damage suffered by Plaintiff as a result of BI's failure to fulfill its obligations under the SDA and its breach of contract.

In addition to its broad, off-base attack on the supposedly improper "res judicata" application of the New York judgment, Defendants make a number of arguments specific to individual counts in the complaint here.  None of these arguments has any merit, and most if not all of them have previously been rejected by this court, often more

than once.

B.   Count One: Tortious Interference

In its amended complaint, Plaintiff alleged that Defendants allowed BI to enter into the SDA and then siphoned revenues from BI to prevent it from complying with the terms of the agreement.  (Am. Compl. ¶¶ 60, 62 & 134, Dkt. No. 7.)  In the face of these allegations, and now confronting the judgment against them on liability, Defendants persist in contending that the complaint failed to allege any improper means on Defendants' part that would constitute tortious interference.

In addressing this argument, the court will assume that it is proper for Defendants, having been defaulted for their misconduct during the pretrial phase of this case, to carry on with their attack on the substance of the complaint -- a proposition that, given the court's prior rulings, is not at all self evident.  See Remexcel Managerial Consultants v. Arlequin, 583 F.3d 45, 53 (1st Cir. 2009)(noting that while an entry of default does not preclude a defendant from attacking the sufficiency of the complaint to support a claim, that calculus shifts where the law of the case

already establishes well-pled allegations.) Even making room for this argument, however, it must be noted that over two years ago, on July 25, 2011, this court found that the allegations contained in the complaint were amply sufficient to support a claim for tortious interference and to require the court to deny Defendants' motion under Fed. R. Civ. P. 12(b)(6). <u>Angiodynamics</u>, 2011 WL 3157312 at *7-8.

To reach that conclusion, the court looked at the allegations respecting Defendants' actions towards its subsidiary -- particularly the claim that they set BI up to violate the SDA and wrongfully diverted assets from BI when it suffered an adverse judgment -- and concluded that these allegations satisfied each element of the cause of action. <u>Id</u>. The court reaffirmed that decision on November 22, 2011. (ECF Ord. Nov. 22, 2011.) As it has before, now for the third time, this court finds that the complaint contains specific allegations sufficient to support a valid claim for tortious interference. The default on liability now obliges the court to accept these allegations as true.

Given this, Plaintiff is entitled to "the loss of advantages . . . which, but for such interference, the

plaintiff would have been able to attain or enjoy." Nat'l Merchan. Corp. v. Leyden, 370 Mass. 425, 430 (1976)(citations omitted).[2] Here, the New York court determined that the contract, with pre-judgment interest, was valued at $23,156,287.00. But for Defendants' interference, Plaintiff would have recovered this amount. This sum, therefore, represents the monetary award Plaintiff is entitled to on its claim for tortious interference.

C.  Counts Two and Three: Veil Piercing

Defendants insist that the allegations of the complaint

---

[2] Defendants also argue that Plaintiff's damages for tortious interference, and the fraudulent transfer claims below, should be reduced by the supposed "fact" that BI lacked the ability to pay Plaintiff's settlement with Diomed and VNUS in April and June 2008. Defendants rely on a declaration by Art Henneberger, a managing agent Defendants refused to produce for a deposition, as support for their contention. First, it would be manifestly unjust to consider Henneberger's declaration now. Angiodynamics, 2014 WL 129035 at *11-14. However, even if the court were willing to consider the submission of a witness who has dodged his deposition, it is evident that BI likely would have been capable of paying the amounts owed in these settlements if Defendants had not wrongfully diverted funds out of BI beforehand. Moreover, the supposed debts BI carried that made the company unable to pay the VNUS and Diomed settlements were owed predominantly to other entities in the Biolitec Group, all of which were controlled by the individual Defendant Neuberger. The legitimacy of these supposed debts is therefore highly doubtful. (Dkt. No. 404.)

are insufficient to justify piercing the corporate veil under Massachusetts law.[3] In July 2011, the court found precisely the opposite, stating that the amended complaint offered evidence sufficient to satisfy virtually all the discretionary factors identified by Massachusetts courts that support piercing a corporate veil. Angiodynamics, 2011 WL 3157312 at *6. Nearly a year later, the court found a probability of success on that claim, AngioDynamics, 910 F. Supp. 2d at 357; this finding was subsequently affirmed by the First Circuit. AngioDynamics, Inc. v. Biolitec AG, 711 F.3d 248, 251 (1st Cir. 2013). In sum, the complaint clearly offers a more than adequate legal and factual basis for piercing the corporate veil. As a result, Defendants essentially stand in the shoes of BI and are accountable for the judgment against it. Since Plaintiff holds the unsatisfied NY judgment for $23,156,287.00 against BI,

---

[3] Defendants now also appear to contend that foreign law may govern the claims for corporate veil piercing. This court, and the First Circuit, have already utilized Massachusetts law when evaluating these claims. See, e.g., Angiodynamics, 910 F. Supp. 2d at 356-57. Not only has Defendants' position on this issue shifted, but they do not provide any United States authority applying non-U.S. law on a veil piercing claim that would justify the application of foreign law to this case.

Defendants are now liable on counts two and three for that amount.

D. <u>Count Four: Fraudulent Transfer</u>

Defendants contend, as they have before, that Plaintiff may only recover for fraudulent transfers <u>specifically</u> made to BAG. On May 15, 2013, this court denied Defendants' Motion for Judgment on the Pleadings anchored largely on that argument. (Endorsed Order, Dkt. No. 275.) That motion, and the court's later denial of Defendants' Motion for Reconsideration, (Dkt. No. 339), adopted Plaintiff's opposition memoranda. (Pl's Mems. in Opp'n, Dkt. Nos. 258 & 311.)

In its memoranda, Plaintiff emphasized the plain language of the relevant statute, which provides that judgment may be entered against: "the first transferee of the asset <u>or the person for whose benefit the transfer was made</u>." Mass. Gen. Laws ch. 109A, § 9 (emphasis added). As the statute makes evident, Plaintiff properly chose to target Defendants, the parties at the top of the Biolitec group, who instigated, controlled, and benefitted from the fraudulent scheme. This is sufficient to support the cause

of action.

In terms of recovery, a "creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less." Id. In its complaint, Plaintiff alleges that the value of the fraudulent transfers is, even limiting the value of the transferred patents to $1 million, $18,444,137.50. Though the amount is engulfed in the $23,156,287.00 owed by Defendants on other counts, Plaintiff would still be entitled to the $18,444,137.50 in damages, at a minimum, for this count.

E.  Count Five: Mass. Gen. Laws ch. 93A

Defendants rehash two arguments in response to Plaintiff's chapter 93A claim. First, they contend that the allegations of the complaint show a mere breach of contract and do not include facts demonstrating "unfair or deceptive acts or practices." Second, they say that Plaintiff has failed to establish Massachusetts as the "center of gravity" where the events underlying the claim occurred, as required under the statute. (Defs' Mem. 35-36, Dkt. No. 405.)

In July 2011, the court explicitly rejected both of those arguments, noting that "this case centers on the allegation that Defendants fraudulently transferred funds out of a <u>Massachusetts</u>-based entity . . . . This allegation is sufficient to overcome the motion to dismiss." <u>Angiodynamics</u>, 2011 WL 3157312 at *8-9 (emphasis added). Moreover, the suggestion that the claims set forth in the complaint support no more than a cause of action for breach of contract borders on the absurd. Defendants are charged, in essence, with having inveigled Plaintiff into signing the SDA and, then, ensuring that BI would not be able to comply with it by siphoning assets out of BI that could have been used to hold Plaintiff harmless from later claims. This is much more than a simple breach of contract. Defendants' unfair and deceptive conduct was prohibited under chapter 93A, and the statute has been properly invoked.

Actual damages resulting from Defendants' actions are easily calculated as the value of the contract, plus pre-judgment interest, adjudicated in New York at $23,156,287.00.

The only arguable question is whether the court should

multiply those damages.  Section 11 of chapter 93A permits a court to double or treble damages if the court finds "the act or practice was a willful or knowing violation" of chapter 93A.  This remains true where a party succeeds through default judgment.  See KPS & Assoc. v. Designs by FMC, Inc., 318 F.3d 1, 25 (1st Cir. 2003)(affirming doubling of compensatory damages).

Taking the complaint as true, Defendants willfully allowed BI to enter into the SDA without any intention of complying with its indemnification obligations.  Defendants then intentionally interfered with the contract, inducing BI to break the agreement.  Finally, Defendants transferred at least $18 million of BI's assets once its liability became apparent.  Their goal, quite clearly, was to prevent Plaintiff from being indemnified and, subsequently, from recovering the resulting New York judgment.

Given these facts, Defendants' actions were calculated, deceitful, and egregious.  Defendants conducted themselves in an effort to escape their obligations and, equally troubling, to prevent the enforcement of a judicial mandate.  As a result, the court, as is contemplated by the statute,

will treble the damages to $69,468,861.00.[4]

F. <u>Pre-Judgment Interest, Attorney's Fees, and Costs</u>

In addition to damages, Plaintiff argues that it is entitled to pre-judgment interest at 12%, from the date of the New York judgment, November 8, 2012, to the February 24, 2014, hearing date. Mass. Gen. Laws ch. 231, § 6B. This amount totals $3,600,961.23.

Moreover, Plaintiff believes it is also owed attorney's fees and costs under Mass. Gen. Laws ch. 93A. In support of that claim, Plaintiff presents records detailing that amount at $1,850,600.34. See (Dkt. No. 400.)

Defendants fail to oppose either contention. The court, noting the lack of objection, and making an independent evaluation of the merits of these arguments, agrees that Defendants must pay both amounts.

---

[4] Plaintiff correctly points out that, though the New York judgment includes pre-judgment interest, the full amount of the judgment may be trebled. See <u>R.W. Granger & Sons v. J & S Insulation, Inc.</u>, 435 Mass. 66, 84 (2001)("As to [the litigant's] contention that the interest and attorney's fees components of the judgment on the underlying bond claim should not have been included in the amount of damages subject to multiplication, the judge was correct to include both components.")

## IV. CONCLUSION

Throughout the course of this litigation, nearly half a decade in length, Defendants have tried to circumvent the judicial process and evade accountability. When their conduct evolved from evasive, to delinquent, to grossly contumacious, Defendants left the court no choice but to enter default judgment in Plaintiff's favor.

Accepting Plaintiff's allegations as true, the court hereby orders the clerk to enter judgment, jointly and severally, against Defendants BAG (and/or the Austrian entity now bearing that name), Biomed, and Wolfgang Neuberger, in the amount of $74,920,422.57, consisting of:

- Actual damages in the amount of $23,156,287.00, trebled under Mass. Gen. Laws ch. 93A to $69,468,861.00.

- Pre-judgment interest from the date of the NY judgment, November 8, 2012, and the February 24, 2014, damages hearing, in the amount of $3,600,961.23.

- Reasonable attorney's fees and costs in the amount of $1,850,600.34.

The clerk will enter judgment for Plaintiff. This case may now be closed.

It is So Ordered.

                                        <u>/s/ Michael A. Ponsor</u>
                                        **MICHAEL A. PONSOR**
                                        **U. S. District Judge**