UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ANGIODYNAMICS, INC.,                )
                Plaintiff,          )
                                    )
                                    )
                v.                  ) C.A. NO. 09-cv-30181-MAP
                                    )
BIOLITEC AG,                        )
WOLFGANG NEUBERGER,                 )
BIOLITEC, INC., and                 )
BIOMED TECHNOLOGY HOLDINGS,         )
LTD.,                               )
                Defendants.         )


MEMORANDUM AND ORDER
REGARDING PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 37;
PLAINTIFF'S MOTION FOR EXPENSES; AND PLAINTIFF'S FURTHER MOTION
FOR RULE 37 SANCTIONS
(Dkt. Nos. 522, 622, and 639)


March 29, 2018


PONSOR, U.S.D.J.


I.  INTRODUCTION

    Plaintiff has filed three motions seeking various

sanctions for Defendants' deliberate refusal to comply with

this court's post-judgment discovery orders.  Defendants'

counsel does not deny that his clients have knowingly and

intentionally flouted these orders.  Indeed, this most recent

conduct of Defendant Wolfgang Neuberger is perfectly consistent

with Neuberger's pattern of unscrupulous and dishonorable conduct both as a litigant and a businessman, over many years.[1]

After a summary of the pertinent procedural background, the court's rulings on the motions are set forth below. As will be seen, the court will allow Plaintiff's first motion, in part, declining to enter judgment as requested but imposing a monetary contempt sanction as an alternative. It will allow the second motion for attorney's fees, imposing this sanction on both Defendants and their counsel. It will deny the third motion.

## II. PROCEDURAL BACKGROUND

The numerous decisions already issued by this court and by the First Circuit make it unnecessary to recite a fine grained history of the background of this case. See generally AngioDynamics, Inc. v. Biolitec AG, 880 F.3d 600 (1st Cir. 2018) (declining, "reluctantly," to impose sanctions on defense counsel); AngioDynamics, Inc. v. Biolitec AG, 880 F.3d 596 (1st Cir. 2018) (affirming district court's denial of Defendants' motion for relief under Rule 60(a) and 60(b)(5));

---

[1] His attorney's behavior has also been of concern. In his latest foray before the Court of Appeals, Neuberger's counsel barely escaped a rare imposition of sanctions upon him personally. AngioDynamics, Inc. v. Biolitec AG, 880 F.3d 600, 601 (1st Cir. 2018).

AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 283 (D. Mass. 2014) (entering default judgment against Defendants on the issue of liability as a sanction for misconduct during the course of discovery), and AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 299 (D. Mass. 2014) (entering judgment for Plaintiff in the amount of $74,920,422.57), both aff'd, 780 F.3d 429 (1st Cir. 2015); AngioDynamics, Inc. v. Biolitec AG, 946 F. Supp. 2d 205 (D. Mass. 2013) (allowing Plaintiff's emergency motion for sanctions, issuing an arrest warrant for Defendant Neuberger for civil contempt, and levying coercive fines), aff'd and remanded in part, 780 F.3d 420 (1st Cir. 2015); AngioDynamics, Inc. v. Biolitec AG, 910 F. Supp. 2d 346 (D. Mass. 2012) (denying Defendants' emergency motion for reconsideration of the preliminary injunction order).

Even with this overview, the narrative summary needed to put the court's current rulings in context is unfortunately somewhat lengthy.

The story begins with a supply and distribution agreement Defendant Biolitec, Inc., entered into with Plaintiff, which included a provision requiring Biolitec to hold Plaintiff harmless from any damages resulting from patent infringement

3

litigation arising from the sale by Plaintiff of Biolitec's products.  When Plaintiff found itself the target of precisely the patent litigation contemplated, Biolitec reneged on its agreement.  Plaintiff sued to enforce the agreement in the Northern District of New York, and in 2012 it obtained a judgment against Biolitec in the amount of $23,156,287.00.  (Dkt. No. 205, Attach. 1 at 7.)

To avoid paying this judgment, two related Biolitec entities, Biomed Technology Holdings, Ltd., and Biolitec AG, looted Biolitec, removing all its assets so that it would essentially be judgment-proof.  The upshot was this lawsuit, filed in October 2009 against three corporations and one individual: Biolitec, Inc. (a Massachusetts corporation); Biolitec AG (a German corporation); Biomed Technology Holdings, Ltd. (a Malaysian corporation); and Dr. Wolfgang Neuberger, president, CEO, Chairman, and dominant shareholder of Biolitec AG as well as numerous affiliated entities.  During the preliminary stage of the litigation, Neuberger dodged service of process energetically, greatly delaying the litigation. (May 17, 2011, Mem. & Order at 3 (remarking on Defendant Neuberger's "evasive conduct" and his counsel's "possibly

4

inadvertent but nevertheless misleading statements"), Dkt. No. 47.)

A critical moment in the lawsuit occurred in August 2012, when Plaintiff learned of the plans of Biolitec AG to merge with its Austrian subsidiary. Persuaded that this move was intended to make any judgment obtained against Biolitec AG in this court unenforceable, the court granted a preliminary injunction prohibiting the merger. (Order dated Aug. 29, 2012, Dkt. No. 126.) Subsequent motions to reconsider and to vacate in December 2012 and February 2013 were denied, and Defendants appealed to the First Circuit. All during this time, Defendants' counsel repeatedly assured this court that his clients, though disagreeing, would respect the injunction and not proceed with the merger. In the teeth of these assurances, and while Defendants' appeal was pending, Neuberger intentionally violated the preliminary injunction by organizing and consummating the Biolitec AG downstream merger into Austria. As a result, on March 22, 2013, Plaintiff filed its first Motion for Contempt. (Dkt. No. 205.)

On April 1, 2013, the First Circuit affirmed the issuance of the preliminary injunction, noting that the "troubling

questions about Defendants' good faith" raised before the
district court were even "more disquieting in light of
defendants' decision to complete [the] merger . . .
notwithstanding the court's preliminary injunction."
AngioDynamics, Inc., 711 F.3d 248, 250 n.1.

In connection with Plaintiff's motion for contempt, the
court ordered Defendant Neuberger to appear in person to show
cause why he should not be sanctioned.  After Defendants'
counsel informed the court that Neuberger refused to appear,
the court issued a warrant for his arrest.  This warrant is
still outstanding.  Someday, perhaps, it may result in his
well-deserved apprehension.

In addition to the warrant for arrest, the court, on April
11, 2013, allowed Plaintiff's motion for contempt.  This ruling
provoked motions by Defendants for reconsideration and for
recusal.  The court denied both motions; a petition for
mandamus seeking an order requiring recusal was rejected by the
First Circuit as "entirely without merit."  (Dkt. No. 380.)

Defendants' continuing contempt eventually led to entry
of a default judgment against them on March 18, 2014, for
$74,920,422.57.  This judgment was affirmed by the First

Circuit on March 11, 2015, which stated: "Facing repeated recalcitrance almost five years after [Plaintiff] filed the instant action, the district court acted well within its discretion when it concluded that no lesser sanction could address the twin goals of penalty and deterrence." AngioDynamics, Inc., 780 F.3d at 436.[2]

Predictably, Defendants have ignored the outstanding judgment. Plaintiff in response has worked steadily, through what would in an ordinary case be routine post-judgment discovery, to locate assets from which to satisfy the judgment, at least in part. For example, Plaintiff served a document request seeking information on United States agents for Biolitec entities engaged in the manufacture or processing of products imported into this country. An interrogatory asked Defendants to "[l]ist all accounts receivable held by any Biolitec entity in which the amount is owed by any United

---

[2] In its decision the First Circuit remanded the case, in part, instructing this court to put a cap on the escalating civil sanction intended to coerce Neuberger into reversing the forbidden merger. This court modified its sanction order accordingly, and the First Circuit affirmed this action on May 6, 2016. AngioDynamics, Inc. v. Biolitec AG, 823 F.3d 1, 10 (1st Cir. 2016).

States-based entity or person." (Reynolds Aff., Dkt. No. 498, Attach. 2 at 5-6.)

These discovery initiatives made sense. Good cause exists to conclude that Defendants, and particularly Neuberger, continue to enjoy substantial income from business transactions conducted in the United States through foreign corporations controlled by him. Neuberger is the moving force behind an array of affiliated corporations established from Malaysia, to Dubai, to Latvia. Evidence suggests some of them may do business in this country.[3]

In response to these discovery initiatives, Defendants filed partial, superficial responses, but substantively stonewalled. As a result, on December 2, 2015, Plaintiff filed a motion to compel, which was allowed by the court on February 18, 2016, with an order that Defendants serve full and complete responses by March 21, 2016. Defendants failed to comply and filed an interlocutory appeal of the court's ruling with the

---

[3] Trustee process against Neuberger-affiliated American entities resulted in the prompt transfer of their United States assets to foreign companies controlled by Neuberger, followed, the next day, by their filing of bankruptcy. Litigation in the bankruptcy court arising from this conduct has recently been settled. (See Notice of Settlement Agreement, Dkt. No. 650.)

First Circuit.  On June 27, 2016, Plaintiff filed a motion for sanctions (Dkt. No. 522), which will be addressed below.

On August 31, 2016, the First Circuit dismissed Defendants' appeal, observing that the district court's discovery ruling did not constitute a final appealable order.  Among other reasons for the dismissal, the Court of Appeals stated that to challenge the order Defendants "may refuse to comply with it and the district court may then hold them in contempt, thereby opening a potential path for review."  (United States Court of Appeals Judgment of Aug. 31, 2016, at 1, Dkt. No. 540.)

Plaintiff, meanwhile, continued its attempts to unearth assets in the United States from which it might satisfy the outstanding judgment, this time serving discovery seeking information relating to the identification of U.S. patents, copyrights, or trademarks in which Biolitec entities possessed an interest.  Defendants again failed to provide substantive responses.  Again, Plaintiff filed a motion to compel (Dkt. No. 551), again the court allowed the motion (Dkt. No. 575), and again Defendants refused to comply.  On April 12, 2017, Plaintiff filed a motion for attorney's fees pursuant to Rule 37(a)(5)(A) (Dkt. No. 622), which is addressed below.

On July 27, 2017, Plaintiff filed a motion for sanctions based on Defendants' failure to comply with the court's order allowing Plaintiff's second motion to compel. (Dkt. No. 639.) This third motion, as will be seen below, seeks an order from this court first finding (as a sanction for Defendants' discovery intransigence) that Defendants own certain patents held in the name of four third-party entities, and second ordering Defendants to transfer these patents to Plaintiff.

While Plaintiff was vainly trying to get responses to its discovery, or compliance with court orders compelling it, Defendants continued to dun the Court of Appeals with attempts to obtain reversal of this court's rulings. On Defendants' fifth unsuccessful try, the First Circuit's patience appeared to be wearing thin: "This case is at an end, and we will not be as charitable, and will not expect the district court to be charitable, to any additional attempts at prolonging it." AngioDynamics, Inc., 880 F.3d at 601. At the same time, the Court of Appeals issued a ruling "reluctantly" declining to impose sanctions on Defendants' counsel. Id. at 600.

### III. DISCUSSION

A. Motion for Sanctions Under Rule 37 (Dkt. No. 522)

10

As noted above, in December 2015, Plaintiff moved to compel Defendants to provide information with regard to assets held by third parties that might be available to satisfy the $74.9 million judgment Plaintiff has obtained against them. (Dkt. No. 497.) On February 18, 2016, the court allowed the motion, requiring Defendants to serve full and complete responses to the document requests and interrogatories no later than March 21, 2016. It is undisputed that Defendants have defied the court's order. Indeed, their attorney has declined to confirm whether his clients will comply with the court's ruling, even if they are held in contempt, and the contempt order is affirmed on appeal.[4] Defendants have on multiple occasions appealed rulings by this court and then continued to ignore them when they are affirmed. (See Dkt. No. 649, at 10-11, listing twelve instances in this litigation where Defendants defied a court order, filed a motion to vacate it or took an appeal, and then continued to defy the order once it was upheld.)

---

[4] Counsel has only gone so far as to suggest, in a footnote to a recent memorandum, that his clients are "likely to comply" with this court's ruling in the event the First Circuit affirms it, but possibly only to the extent of disclosing "publicly available" information. (Defs.' Mem. in Opp'n at 14 n.3, Dkt. No. 647.)

As a sanction pursuant to Fed. R. Civ. P. 37(b)(2)(A),
Plaintiff's motion requests that the court enter a default
judgment establishing that "all U.S. revenues of any Biolitec
group entities belong to [D]efendants and thus are subject to
execution to satisfy AngioDynamics's judgment." (Dkt. No. 522
at 2.) The motion includes as an exhibit a proposed "Judgment
in a Civil Case." This judgment, if issued by the court, would
find that "[a]ny sum or liability owed to any entity owned
directly or indirectly by [Biolitec AG, Biomed Technology
Holdings, and Wolfgang Neuberger] belongs to those [D]efendants
and is subject to execution or other applicable procedure to
satisfy the March 18, 2014 judgment of this Court against the
[D]efendants." (Id. at Ex. 1.) The proposed judgment
specifically excludes certain named entities that, at the time
Plaintiff's motion was filed, were subject to formal Chapter
7 bankruptcy proceedings.

The problem with this motion, at least as originally filed,
is that it has not identified who the "Biolitec group entities"
referred to are (assuming they exist), or precisely what the
relationship of these unspecified entities to Defendants
(whether "direct" or "indirect") may be. The phrase "Biolitec

group entities" seems to be merely a shorthand used by Plaintiff to refer to any unnamed entities owned "directly or indirectly" by Defendants.[5]

This lack of specificity means that the court, if it entered the requested judgment, would be, in essence, flailing around in the dark hoping to hit something that deserved a blow. While the authorities cited by Plaintiff confirm the power of courts to use the contempt sanction generally in connection with misconduct during discovery, none of them support the specific sort of judgment Plaintiff is requesting.

There is a maddening irony here, which Defendants and their counsel are surely aware of. The reason for Plaintiff's and the court's blindness is Defendants' shameless stonewalling. They refuse to reveal whether any Biolitec group entities, which Defendants prefer to call "non-party affiliates," even exist.

---

[5] In a more recent filing, Plaintiff has identified four corporations that it says are Biolitec group entities: Biolitec Unternehmensbeteiligungs II AG (BUIIAG) of Austria; Biolitec Pharma Marketing, Ltd. (BPML) of Malaysia; Biolitec Pharma IP and Investment Ltd. (BPI) also of Malaysia; and Biolitec SIA (BSIA) of Latvia. (Pl.'s Mem. in Support at 1 n.5, Dkt. No. 640.) In a subsequent memorandum, Plaintiff makes clear that this listing only captures entities using as part of their name the term "Biolitec" in some form. Other corporations with different names may still be "Biolitec group entities." (Pl.'s Reply at 8 n.9, Dkt. No. 649.)

Hints and inferences suggest that indeed these "entities" or "affiliates" are alive and well, that they do business in the United States, and that Wolfgang Neuberger is very possibly garnering significant income through them -- funds that should be available to satisfy Plaintiff's judgment. But Defendants refuse to respond to routine post-judgment discovery and provide information that they possess regarding these entities. This information would allow Plaintiff to take Step One, to confirm that these entities exist. Step Two might follow, allowing Plaintiff to discover whether the entities possess funds owed to Defendants that may legitimately be garnished to satisfy the judgment. None of this can happen because of Defendants' defiance of court orders.

As frustrating and as ethically dubious as Defendants' tactic may be, the solution is not for the court to issue a broad-ranging judgment whose targets and impact cannot be gauged. For this reason, and for this reason alone, Plaintiff's motion must be denied.[6]

---

[6] At times, Plaintiff appears to argue that it is uncontested, or conceded, that Defendants are in privity with, own, or control the "Biolitec group entities." The court has been unable to locate any such formal or binding concession. The tenor of Defendants' opposition is quite the opposite: they

Having made this adverse ruling, the court must underline that it is not adopting any of the often repeated, and frequently nonsensical, arguments offered by Defendants in opposition. Defendants continue to contend that the underlying default judgment, though affirmed by the First Circuit more than once now, is invalid, because the record contains "uncontested expert declarations that a judgment would be equally unenforceable in both Austria and Germany." (Defs.' Mem. in Opp'n at 3, Dkt. No. 533.)  The court has time and again rejected this hired-gun opinion, which it has no obligation to adopt, finding the contrary evidence (including the deposition testimony of a Biolitec insider) more persuasive.

Another of Defendants' arguments is especially distasteful: the accusation that Plaintiff is "arrogantly" requesting relief against the Biolitec group entities "without even attempting to identify the entities." (Id. at 3.) Defendants make this argument without stooping to acknowledge

---

contend that the entities or affiliates (if they exist) are independent corporations under the law; judgment cannot be obtained against them, and their assets cannot be seized, without formal notice and the other protections of due process. Of course, this contention is irrelevant to the question whether Defendants are obliged to provide discovery about these entities.

that the reason Plaintiff, and the court, are unable to identify the entities, or even learn whether they exist, is because Defendants have taken such pains to conceal them, in bald-faced violation of court orders.

Finally, the argument that the court lacks jurisdiction over the entities and would be operating beyond its authority by issuing a default judgment against these so called "non-party affiliates" falls flat because the court is not in a position of knowing whether it has jurisdiction over the parties, due to Defendants' own misconduct in throwing a blanket over them.

It is unfortunate, but true, that the basis of the court's ruling is simple and unrelated to Defendants' specious opposition. The fact is the court is essentially blind both as to the targets of Plaintiff's proposed judgment and as to the nature of the judgment's impact. Even in circumstances crying out for justice, the court would risk compounding inequity by entering the requested judgment in this situation.

Other sanctions are, however, appropriate. Defendants themselves recognize this, indicating that they wish to take yet another appeal and that an order of contempt would entitle them to do so. (Dkt. No. 540.) Not surprisingly, Defendants

suggest that any sanction for their contempt be "modest."
(Defs.' Mem. in Opp'n at 16 n.3, Dkt. No. 634.)  While naturally
disagreeing that the sanction should be merely a slap on the
wrist, Plaintiff agrees that at this point, and having exhausted
other options, a contempt sanction is proper at a minimum.

Based on the foregoing, as an alternative to the judgment
sought by Plaintiff, the court hereby finds that Defendants are
in contempt of its discovery order dated February 18, 2016 (Dkt.
No. 511), and orders Defendants, one last time, to serve full
and complete answers to Plaintiff's interrogatories and
requests for production, on or before April 15, 2018.  Failure
to do this, will result in the imposition of a contempt sanction
in the amount of $25,000, and a further sanction of $25,000
accumulating on the fifteenth of the month for each succeeding
month, until Defendants have complied, up to a maximum of
$1,000,000.

To this extent, Plaintiff's Motion for Sanctions (Dkt. No.
522) is hereby ALLOWED, in part.  Absent compliance, the court
orders that the $25,000 contempt sanction be paid to the Clerk
of Court of the United States District Court for the District
of Massachusetts on or before April 15, 2018.  In the event of

an appeal, the court orders that the sanction nevertheless continue to be paid monthly and held by the Clerk in an interest-bearing account pending the outcome of the appeal. This sanction is for civil contempt; it has been crafted to enforce compliance by Defendants with the court's discovery order and may be reconsidered when and if Defendants do comply with that order.

B.    <u>Motion for Expenses</u> (Dkt. No. 622)

This motion is straightforward and should obviously be allowed.  Rule 37 states that when the court grants a motion to compel it "<u>must</u>, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the . . . <u>attorney advising that conduct</u>, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Escape hatches to avoid an award of fees and expenses in these circumstances are closed to Defendants here.  Plaintiff consulted with Defendants twice before filing the motion, Defendants' opposition was not substantially justified, and the award is more than just.

18

In fact, even without the mandatory language of Rule 37(a)(5)(A), it would be clear that the egregious circumstances of this case demand the award requested as a matter of the court's discretion. The motion to compel at issue here, Plaintiff's second, was filed on December 26, 2016. (Dkt. No. 551.) It was allowed by the court on February 17, 2017. The motion for costs and fees followed on April 12, 2017. No substantive response has ever been filed to these discovery requests; Defendants' failure to do this lacks any plausible justification.

Defendants' argument that the December 2016 motion was unnecessary and that an alternative strategy by Plaintiff -- a motion for a contempt sanction to punish Defendants' earlier failure to respond to discovery -- would have saved time and money is without merit, for at least two reasons.

First, nothing in the law, and certainly nothing in Rule 37, requires a court to wait to impose sanctions for a discovery violation until the violator has been held in contempt and unsuccessfully sought review in the Court of Appeals. On the contrary, the rule says that when a motion to compel is allowed, the court "must" require the party whose conduct necessitated

the filing of the motion to pay costs and attorney's fees, absent some overriding consideration. The monetary penalty here is a straightforward application of that mandate.

Second, filing a new motion to compel was a perfectly legitimate strategy by Plaintiff to try to pry new discovery out of Defendants. The second round of interrogatories and requests for production were aimed at an entirely different area of discovery. A party wrongfully resisting discovery cannot avoid sanctions by offering stage directions as to how the moving party might, in its view, have more economically proceeded. Plaintiff's counsel had a right, and an obligation to his client, to proceed with tools of his own choice, the ones he felt offered the greatest likelihood of success. Defendants could have avoided the risk of an award of costs and fees simply by responding to Plaintiff's discovery.

The amount of the costs and fees award requested here, $48,930, would be somewhat on the high side if this were a normal case, but this case is anything but normal. Plaintiff's counsel understandably briefed his motion to compel with particular thoroughness and diligence, given Defendants' history of endlessly inventive opposition. The choice of

motion and hours spent on that motion were well justified in light of Defendants' history of dilatory tactics.  The court finds the hours expended litigating the discovery motion by Plaintiff's counsel entirely reasonable in this context. Defendants offer no opposition to the hourly rates, which the court also finds reasonable.

The award of sanctions will be against Defendants and against Defendants' primary counsel, The Griffith Firm, which has been calling the shots throughout this litigation.  It is quite clear that local counsel is acting essentially as a host attorney under the local rules.  Local counsel's entirely formal position was evidenced at the January 25, 2017, hearing, when counsel for The Griffin Firm was unexpectedly absent due to a family emergency, and local counsel merely requested a continuance.  (Dkt. No. 567.)

Evidence of complicity by The Griffin Firm in Defendants' contumacy has been manifested by the continuous stream of baseless arguments offered in support of its clients' conduct. A good example is the specious argument, offered at the outset of this case and trotted out repeatedly since then, that Neuberger was justified in defying the court's preliminary

injunction and moving ahead with the downstream merger of his

German company with his Austrian one, because this merger did

not substantively prejudice Plaintiff.[7]  First of all,

Neuberger had an obligation to comply with the court's order,

period.  He was not entitled to make his own assessment as to

its necessity.  Second, as noted above, his suggestion that

Plaintiff was not prejudiced by the merger is contrary to the

strong weight of the evidence.

In the same vein, counsel's argument in opposition to the

motion to compel now at issue is so glaringly baseless that it

reflects a lack of good faith and a failure to satisfy the

obligation incumbent upon an officer of the court.  Counsel

grossly mischaracterizes the issue in question as "whether

disclosure of assets of a judgment debtor's affiliate exceeds

the scope of permissible post-judgment discovery where the

judgment creditor fails to articulate a valid legal theory under

which it may execute its judgment against such assets."

(Defs.' Mem. in Opp'n at 16 n.3, Dkt. No. 634.)  As noted above,

Defendants will not identify their affiliates, will not even

---

[7]  It is noteworthy that this argument was offered after primary
counsel had represented in open court that his client would
comply with the injunction.

confirm whether they exist, so Plaintiff is entirely unable to litigate the issue Defendants cynically identify as central. This amounts to tying Plaintiff's hands and then condemning him for not throwing a proper punch -- transparent game-playing.

Equally importantly, Plaintiff's motion seeks discovery only, and, more importantly, discovery of information that is entirely within the control of the named Defendants. Provision of this information, which Defendants do not deny possessing, would merely give Plaintiff an opportunity to offer further argument for execution of its judgment in the daylight of full and fair disclosure. Plaintiff might win or lose, but seeking access to information Defendants themselves possess about "affiliates" or "entities" possibly holding funds or other valuable property belonging to Defendants is perfectly appropriate, routine post-judgment discovery. No proper rationale justifies withholding this information. Counsel's defense of his clients' refusal to produce this discovery falls far outside the boundary of zealous advocacy.

For the foregoing reasons, Plaintiff's Motion for Expenses (Dkt. No. 622) is hereby ALLOWED in the amount of $48,930. Both Defendants and their primary counsel, The Griffin Firm, are

jointly and severally liable for this amount, which the court orders to be paid to Plaintiff's counsel on or before May 1, 2018.  In the event that Defendants appeal this ruling prior to that date, the court orders that this payment be made to the Clerk of Court for the United States District Court for the District of Massachusetts and held in an interest-bearing account pending the outcome of the appeal.

C.  <u>Motion for Rule 37 Sanctions</u> (Dkt. No. 639)

This most recent motion, which seeks an order that certain third parties must convey a large number of patents to Plaintiff (or, failing that, that the court make the conveyances itself) must be denied for largely the same reasons that the earlier motion for sanctions (Dkt. No. 522) has been denied.  This motion offers somewhat more detail, naming four foreign corporations that Plaintiff contends fall under the "Biolitec group" umbrella.  Moreover, an attached declaration offers an extensive catalogue of patents allegedly owned by these entities.

Two problems make allowance of this motion inadvisable. First, the four identified foreign corporations may, or may not, include all the targeted Biolitec group entities.  Other

corporations may also be subject to the requested order. (See Pl.'s Reply at 8 n.9, Dkt. No. 649.) The court is still in the dark about the exact parties that might be subject to its order beyond the four named.

Second, even to as the entities named, it is unclear where they stand in relation to the named Defendants. Plaintiff asserts that Defendants "have conceded that all Biolitec entities are in privity with them." (Pl.'s Mem. in Support at 13 n.13 (citing an earlier memorandum filed by Plaintiff), Dkt. No. 640.) But the record does not appear, at least at this point, to contain any such binding concession. Certainly, under Plaintiff's definition of the term "Biolitec group entities" -- entities owned directly or indirectly by the named Defendants -- some connection must exist. The connection, however, is not sufficiently clear to leave the court comfortable ordering assignment to Plaintiff of dozens of patents, as well as other intellectual property, owned, at least on their face, by third-parties.

This is not a classic situation where a judgment creditor, for example, is seeking access to funds held by a bank in an account under the name of the debtor, or held by an employer

and subject to garnishment as funds owed to an employee/debtor. At this stage, and without further information, the court has no sufficient basis to conclude that patents or other intellectual property held in the name of "Biolitec Pharma" or one of the other four named entities are necessarily equitably owned by Neuberger and subject to forfeiture.

It bears repeating, once again, that the source of this obscurity is Defendants' contumacy -- the wrongful withholding of relevant evidence and the repeated violation of court orders. The provision of routine post-judgment discovery by Defendants would allow Plaintiff to litigate, and this court to adjudicate, the question of Plaintiff's entitlement to the patents and to funds and other property possibly being held by third parties but equitably owned by Defendants.  This discovery should have been provided long ago.

A paragraph of Plaintiff's memorandum argues that, as an alternative remedy, the court can order joinder of the four Biolitec group entities now identified by Plaintiff as "reach and apply defendants."  The court declines to do this on its own initiative.  Plaintiff of course is free to file a motion seeking this joinder.

For the foregoing reasons, Plaintiff's Motion for Rule 37
Sanctions (Dkt. No. 639) is hereby DENIED.

### IV. CONCLUSION

In summary, the court rules as follows.  Plaintiff's
Motion for Sanctions Under Rule 37 (Dkt. No. 522) is hereby
ALLOWED, in part.  Defendants have until April 15, 2018, to
serve full and complete answers to Plaintiff's interrogatories
and requests for production.  Absent compliance, the court
orders that Defendants pay $25,000 to the Clerk of Court of the
United States District Court for the District of Massachusetts
on or before April 15, 2018, and on the 15th of every month
thereafter, up to a maximum of $1,000,000, until Defendants have
complied with the court's order.

Plaintiff's Motion for Expenses (Dkt. No. 622) is hereby
ALLOWED in the amount of $48,930.  Both Defendants and their
primary counsel, The Griffin Firm, are jointly and severally
liable for this amount, which must be paid to Plaintiff's
counsel on or before May 1, 2018.  In the event of an appeal,
the funds will be paid to the Clerk.

Plaintiff's Motion for Rule 37 Sanctions (Dkt. No. 639) is
hereby DENIED.

It is so ordered.

       /s/ Michael A. Ponsor
       MICHAEL A. PONSOR
       U.S. DISTRICT JUDGE